IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. 21-CR-000287 |
| | : | |
| HUNTER SEEFRIED, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS COUNT ONE OF THE INDICTMENT**

COMES NOW the defendant, Hunter Seefried, by and through his counsel, Edson A. Bostic, Esquire, and submits this Memorandum in support of his Motion to Dismiss Count One of the Indictment.

**I.   STATEMENT OF THE CASE**

This matter arises from acts allegedly committed at the United States Capitol Building on January 6, 2021.  On or about April 7, 2021, a grand jury returned an eight-count indictment, charging Hunter Seefried with obstruction of an official proceeding, in violation of 18 U.S.C. § 1512(c)(2), 2 (Count One); entering and remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1) (Count Two);  disorderly and disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2) (Count Three); disorderly conduct in a capitol building, in violation of 40 U.S.C. § 5104(e)(2)(D) (Count Four); parading, demonstrating, or picketing in a capitol building, in violation of 40 U.S.C. § 5104(e)(2)(G) (Count Five); entering and remaining in restricted building or grounds with physical violence against property, in violation of 18 U.S.C. § 1752(a)(4) (Count Six); destruction of government property, in violation of 18 U.S.C. § 1361 (Count Seven); and act of violence in the capitol grounds or buildings, in

1

violation of 40 U.S.C. § 5104(e)(2)(F) (Count Eight).  On the day in question, Hunter Seefried was a twenty-three-year-old with a 9th grade education, who happened to accompany his parents, with whom he lives, to the Capitol. The government has also charged his father, Kevin Seefried, with multiple offenses related to the events of January 6, 2021.

Count One of the Indictment against Hunter Seefried alleges that on or about January 6, 2021, he "attempted to, and did, corruptly obstruct, influence, and impede an official proceeding, that is, a proceeding before Congress, by entering and remaining in the United States Capitol without authority and committing an act of civil disorder and engaging in disorderly and disruptive conduct and destroying federal property" in violation of 18 U.S.C. §§ 1512(c)(2) and 2.[1]

Hunter Seefried contends that Count One of the indictment must be dismissed because 18 U.S.C. § 1512(c)(2) is unconstitutionally vague, fails to state an offense and is violative of Hunter Seefried's due process rights under the Fifth Amendment, as well as his rights under the Sixth Amendment. Specifically, Section 1512(c)(2) makes it illegal for a person to otherwise corruptly obstruct, influence, or impede an official proceeding.  However, Count One of the indictment does

---

[1] The statute provides:

**18  U.S.C. § 1512.  Tampering with a witness, victim, or an informant**

(c) Whoever corruptly–

> **(1)** alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or
>
> **(2)** otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so,

shall be fined under this title or imprisoned not more than 20 years, or both.

2

not specify what proceedings before Congress Hunter Seefried allegedly disrupted. The statutory language, its legislative history and legal precedent reflect that § 1512(c)(2) criminalizes tampering with witnesses and information to be presented at an official proceeding. However, the indictment does not allege that Hunter Seefried engaged in such activity. Moreover, Count One must be dismissed as the terms "corruptly" and "otherwise" as set forth in § 1512(c)(2) are void for vagueness. Finally, Count One is impermissibly multiplicitous as it alleges virtually the same offenses as set forth in Counts Three and Four of the indictment. Accordingly, Count One of the indictment must be dismissed.

II.     **LEGAL ARGUMENT**

     A.  **STANDARD OF REVIEW**

Federal Rule of Criminal Procedure 7(c)(1) requires an indictment to contain a "plain, concise, and definite written statement of the essential facts constituting the offense charged...." FED. R. CRIM. P. 7(c)(1). Failure of an indictment to abide by the specificity requirement in Fed. R. Crim. P. 7(c)(1) subjects the indictment to a challenge, pursuant to Rule 12(b)(3)(B) of the Federal Rules of Criminal Procedure, by allowing a defendant to move to dismiss the indictment on the grounds that it fails to state an offense. This Court discussed the legal standards applicable to determining the sufficiency of an indictment in *United States v. Hillie*, 227 F.Supp.3d 57 (D.D.C. 2017). In *Hillie*, the Court recognized that the sufficiency of an indictment implicates "at least two core constitutional protections": (1) the Sixth Amendment's right of an individual accused of a crime "to be informed of the nature and cause of the accusation" and, (2) the Fifth Amendment's guarantee that a criminal defendant may only be prosecuted for offenses, the elements of which have been considered and found to exist by a grand jury such that the defendant may not be subject to multiple prosecutions for the same offense. *Id.* at 69–70 (citations omitted).

The Supreme Court's decision in *Russell v. United States*, 369 U.S. 749, 82 S. Ct. 1038, 8 L. Ed. 2d 240 (1962), is instructive. In *Russell*, the Court held that an indictment charging a defendant with refusing to answer questions before a congressional subcommittee was insufficient and affirmed its dismissal because the indictment failed to allege the subject of the congressional committee's inquiry, an essential element of the offense. *Id.* at 754–55, 771–72. As the Court noted, "Where guilt depends so crucially upon such a specific identification of fact, our cases have uniformly held that an indictment must do more than simply repeat the language of the criminal statute." *Id.* at 764. Hence, the indictment's failure to identify the subject under inquiry was "thus the violation of the basic principle 'that the accused must be apprised by the indictment, with reasonable certainty, of the nature of the accusation against him, * * *.'" *Id.* at 766 (*quoting United States v. Simmons*, 96 U.S. 360, 362, 24 L. Ed. 819 (1877)). Furthermore, the Court held that amending the indictment to add that critical information would not suffice as it would fail to satisfy the Fifth Amendment requirement that the grand jury consider and find all elements of the charged offense. *Id.* at 771 (*citation omitted*).

Applying the principles in *Russell*, *supra* to Count One of Hunter Seefried's indictment, it is evident that it fails to satisfy the specificity requirements of Rules 7(c)(1) and 12(b)(3)(B) of the Federal Rules of Criminal Procedure. As a result, Count One of the indictment is unconstitutionally vague and must be dismissed with prejudice.

### B. Count One of the Indictment Must be Dismissed Because It Fails to Specify the "Proceedings Before Congress" That Hunter Seefried Allegedly Obstructed, Which is an Essential Element of an Offense Under 18 U.S.C. § 1512(c)(2), 2.

To determine legislative intent, courts "always begin with the text of the statute*.*" *United States v. Barnes*, 295 F.3d 1354, 1359 (D.C. Cir. 2002). "It is elementary that the meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that

4

is plain . . . the sole function of the courts is to enforce it according to its terms." *United States v. Hite*, 769 F.3d 1154, 1160 (D.C. Cir. 2014) (*quoting Caminetti v. United States*, 242 U.S. 470, 485 (1917) (internal quotes omitted)). "The search for the meaning of the statute must also include an examination of the statute's context and history." *Hite*, 769 F.3d at 1160. Moreover, "due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope." *United States v. Lanier*, 520 U.S. 259, 268 (1997). In relation to § 1512, the Supreme Court has instructed lower courts to "exercise[] restraint in assessing the reach of [the] . . . statute both out of deference to . . . Congress . . . and out of concern that a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed[.]" *United States v. Arthur Anderson, LLP*, 544 U.S. 696, 703 (2005) (internal citations omitted) (strictly construing § 1512(b)(2)'s broadly worded language in finding that jury instructions failed to instruct that knowledge of wrongdoing and proof of a nexus between the alleged obstruction and an official proceeding were required elements of the offense).

      A review of the text, legislative history, and judicial interpretation of § 1512, especially in light of the Supreme Court's instruction to strictly construe penal statutes, demonstrates that this statute, which punishes obstruction of "official proceedings," does not apply to Electoral College certifications. Section 1512(c)(2) was enacted as part of the Sarbanes–Oxley Act of 2002, P.L. 107-204, which was enacted "to protect investors by improving the accuracy and reliability of corporate disclosures made pursuant to securities laws, and for other purposes." SARBANES–OXLEY ACT OF 2002, Pub. L. No. 107-204, 116 Stat. 745. The Senate Judiciary Committee report described the Act's purpose as "provid[ing] for criminal prosecution and enhanced penalties

5

of persons who defraud investors in publicly traded securities or alter or destroy evidence in *certain Federal investigations*." S. REP. NO. 107-146, at 2 (2002) (emphasis added). *See also Yates v. United States,* 574 U.S. 528, 535–36 (2015) (The Sarbanes-Oxley Act "was prompted by the exposure of Enron's massive accounting fraud and revelations that the company's outside auditor, Arthur Andersen LLP, had systematically destroyed potentially incriminating documents.")  As for the use of the term "official proceeding" in Section 1512(c), because the legislation was due in part to the collapse of Enron, the Committee Report noted that much of Enron's document destruction was "undertaken in anticipation of a SEC subpoena to Andersen for its auditing and consulting work related to Enron." S. REP. NO. 107-146, at 4. Congress was adamant that "[w]hen a person destroys evidence with the intent of obstructing any type of investigation and the matter is within the jurisdiction of a federal agency, overly technical legal distinctions should neither hinder nor prevent prosecution and punishment." *Id.* at 6–7. In short, when considering the Act's preamble and the legislative history, it is clear that Section 1512(c) was aimed at preventing corporations from destroying records relevant to federal securities investigations and was not intended to apply in all circumstances where a government function may have been impeded.

Section 1512(c)(2), which Hunter Seefried is charged with violating, prohibits "corruptly . . . obstructing, influencing, or impeding any *official proceeding*, or attempting to do so." Id. (emphasis added).  The term "official proceeding" is defined in 18 U.S.C. § 1515(a)(1), and for our purposes, the most applicable definition in that section is subsection (B), which defines "*a proceeding before the Congress"* as an official proceeding.  18 U.S.C. § 1515(a)(1)(B) (emphasis added).  Nothing in the statutory language or the legislative history supports the notion that Congress enacted § 1512(c)(2) to criminalize the disruption of a Congressional proceeding by

6

persons engaged in a political rally, no matter how large the crowd or how disorderly the activities of some in the crowd may have become.

This conclusion is further corroborated by the fact that § 1512 is entitled: "**Tampering with a witness, victim, or an informant**." Section 1512's title confirms that it was enacted by Congress to punish obstructive acts designed to illegitimately affect the presentation of evidence in judicial or quasi-judicial hearings before courts, agencies, and Congress. Additionally, the statutory context makes clear that § 1512 and related statutes deal entirely with *obstruction of justice*, i.e., interference with the due administration of investigations and legal process. Section 1512, for example, is replete with language usually associated with terms tied to court-like proceedings such as "testimony," "record[s]," "document[s]," "legal process," "summoning," "witness," "tamper," "availability," "attendance," and "production." Moreover, § 1512 punishes actions tied to attempts to subvert justice, including witness and evidence tampering, subornation of perjury, withholding documents, and other similar actions. Clearly, the "proceedings" protected by § 1512, including "proceedings before the Congress," are *adjudicatory or inquisitive in nature*, requiring investigations, due process, sworn testimony, and document production.[2]

In short, a plain reading of § 1512 demonstrates that the term "official proceeding" refers to "some formal hearing before a tribunal[.]" *See United States v. Ermoian*, 727 F.3d 894, 901 (9th Cir. 2013). A certification of an election by the Electoral College does not remotely fall within the ambit of these definitions of official proceedings as contemplated by Section 1512.

---

[2] More proof that § 1512 is aimed at protecting the fact-finding process inherent in judicial and quasi-judicial proceedings is that it was passed as part of the Victim and Witness Protection Act of 1982 (VWPA), which was enacted by Congress for the purpose of "[e]nhanc[ing] and protect[ing] the necessary role of crime victims and witnesses in the criminal justice process." VWPA, Pub. L. No. 97-291, § 2, 96 Stat. 1248 (1982).

In *United States v. McGarrity*, 669 F.3d 1218 (11th Cir. 2012), the 11th Circuit held that an indictment for obstruction under that section is likewise insufficient when it fails to specify what "official proceeding" was allegedly obstructed. *Id.* at 1239–1240. In that case, the defendants were charged by indictment with obstructing an official proceeding in violation of 18 U.S.C. § 1512(c). *Id.* at 1239. Like Hunter Seefried's indictment, the indictment in *McGarrity* did not specify what that official proceeding was. *Id.* The court noted this was insufficient to "apprise [] the defendant[s] of what [charges they] must be prepared to meet" as the only notice given was that the defendants "obstructed an unknown official proceeding at some time in some place by some action." *Id.* (*quoting Russell*, 369 U.S. at 763).

As in *McGarrity*, Count One of the indictment against Hunter Seefried is fatally flawed because it merely repeats the language of the criminal statute allegedly violated, in this case Section 1512(c)(2), and, like in *McGarrity*, fails to specify what "official proceeding," or more particularly, what "proceeding before Congress" was allegedly obstructed. Such information is necessary here because "the very core of the criminality" that the statute proscribes depends on "a specific identification of fact" namely, what the "proceeding" was that Hunter Seefried allegedly obstructed. *Russell*, 369 U.S. at 764. In sum, without identifying what "official proceeding" was allegedly obstructed, no criminal charge, in violation of Section 1512(c)(2), can be sustained. Section 1512(c)(2) simply does *not* proscribe the obstruction of any and every proceeding before Congress.

Because Section 1512(c) only applies to an "official proceeding" related to the administration of justice — as opposed to a general governmental function — and proscribes only that conduct that corruptly interferes or impedes that administration of justice, it is a necessary for

8

the indictment to set out the specific "official proceeding" that Hunter Seefried allegedly obstructed and reflect whether it was a proceeding related to the administration of justice. This is necessary to inform this Court, and more importantly, Hunter Seefried "with reasonable certainty, of the nature of the accusation against him" and to ensure that it falls within the conduct proscribed by the statute. *See Russell*, 369 U.S at 766.

Since Count One fails to specify the "official proceeding" and, more specifically, the "proceeding before Congress" Hunter Seefried allegedly obstructed, this count of the indictment is constitutionally insufficient and this Court must therefore dismiss.

Even if this Court were to hold that the present indictment sufficiently notifies him of the nature of the charges against him in compliance with the constitutional protections afforded him under the Fifth and Sixth Amendments, as well as Rule 7(c)(1) of the Federal Rules of Criminal Procedure, the indictment is still insufficient as it fails to state an offense. More specifically, as set out *supra*, 18 U.S.C. § 1512(c)(2) only prohibits the corrupt obstruction of proceedings before Congress related to the administration of justice such as a congressional committee investigating a violation of the law where witnesses are subpoenaed to appear and give testimony or to provide relevant evidence. It does not prohibit the obstruction of a proceeding before Congress like the certification of the electoral college vote, a proceeding wholly unrelated to the administration of justice. If the allegation is that Hunter Seefried obstructed the certification of the electoral college vote, that would not be a crime under 18 U.S.C. § 1512(c).

No court has ever interpreted an "official proceeding" as that term is used in Section 1512(c) to apply to a legislative function such as the certification of the electoral college vote. The Government is asking this Court to go well beyond the plain meaning of the term "proceeding,"

its use in the grammatical context of the "official proceeding" definition, the broader statutory context, and the legislative history to allow this prosecution to go forward.

### C. Count One of the Indictment Must be Dismissed Because the Terms "Otherwise" as Used in Section 1512 are Unconstitutionally Vague.

Count One of the indictment charges a violation of § 1512(c)(2), a catch-all provision that reaches conduct that "otherwise" obstructs an official proceeding. This Court should not expansively read "otherwise" in § 1512(c)(2), a statute enacted by Congress to address the Enron scandal and preclude the destruction of evidence in federal securities investigations, the actions of persons engaged in political demonstrations. Congress could not possibly have intended to include "political demonstrations" within the scope of the phrase "otherwise." No matter how disruptive, political demonstrations have no relationship to witnesses or information to be presented at proceedings, the proper scope of § 1512 based on its statutory language and its legislative history. A reading of the "otherwise" catchall provision in § 1512 that includes only conduct intended to generate false testimony, impede the testimony of witnesses, or impair the collection of evidence in some fashion is consistent with the case law.[3] Count One of the indictment alleges no such conduct by Hunter Seefried. As Count One of the indictment is drafted, the term "otherwise" is

---

[3] *See, e.g., United States v. Pugh*, 945 F.3d 9, 28 (2d Cir. 2019) (defendant destroyed several USB drives and deleted data on his iPod); *United States v. Burge*, 711 F.3d 803, 809 (7th Cir. 2013) (upholding conviction of former Chicago police official for providing false answers to interrogatories in a civil law suit filed by a person seeking damages for mistreatment while in police custody)[3]; *United States v. Jefferson*, 751 F.3d 314, 321 (5th Cir. 2014) (making intentional false statements to court during a preliminary injunction hearing); *United States v. Phillips,* 583 F.3d 1261 (10th Cir. 2009) (affirming conviction of defendant who disclosed undercover officer's identity to impede a grand jury investigation); *United States v. Carson*, 560 F.3d 566, 584 (6th Cir.2009) (making false statements to a grand jury); *United States v. Mintmire*, 507 F.3d 1273, 1290 (11th Cir. 2007) (defendant "attempted to orchestrate" grand jury witness's testimony by sending notes to an attorney who in turn "coached" the witness); *United States v. Lucas*, 499 F.3d 769, 780–81 (8th Cir.2007) (§ 1512(c)(2) conviction affirmed where defendant sought to have others falsely claim ownership of a firearm); *United States v. Ring*, 628 F. Supp.2d 195, 225 (D. D.C. 2009)(false statements covered by § 1512(c)(2)).

limitless, has no textual or other constraints and therefore fails to give fair notice. The charges are not limited to other documents, by reference to § 1512(c)(1). The charges are not limited by reference to the title of §1512 to "[t]ampering with a witness, victim, or an informant." The charges are not limited to false statements, self-dealing, or shredding of evidence by reference to corporate fraud and accounting scandals that impelled passage of the Sarbanes Oxley Act. Nor does case law give any hint that "otherwise" could reach actions by persons engaged in a political demonstration.

The allegation that Hunter Seefried entered the United States Capitol in an attempt "to corruptly obstruct, influence, and impede . . .a proceeding before Congress" as alleged in the indictment does not amount to a violation of § 1512(c)(2). Looking at the statutory intent of Congress when enacting the Sarbanes–Oxley Act, it is unlikely that Congress intended to create a broad general obstruction statute that reaches even the acts of demonstrators – a First Amendment protected activity – in § 1512(c)(2) by using a vague term such as "otherwise." This is especially true where § 1512(c)(2) does not even include a requirement that the person acted willfully, knowingly, or intentionally. Accordingly, Count One of the indictment must be dismissed.

**D. Count One of the Indictment Which Alleges That Hunter Seefried "Corruptly" Influenced, Obstructed and Impeded a proceeding of Congress Is Facially Void For Vagueness.**

In *United States v. Poindexter,* the D.C. Circuit held that the term "corruptly" as used in 18 U.S.C. § 1505, the obstruction statute under which Poindexter was prosecuted "is too vague to provide constitutionally adequate notice that it prohibits lying to the Congress." *Poindexter,* 951 F.2d at 379 (D.C. Cir. 1991).[4] The statutory provision that *Poindexter* found too vague to pass

---

[4] Two years after the Poindexter decision, Congress amended the statue to provide a definition of "corruptly." *See* 18 U.S.C. § 1515(b) ("As used in section 1505, the term "corruptly" means acting with an improper purpose, personally or by influencing another,

11

constitutional muster is materially identical to the language in § 1512(c)(2) charged in Count One.[10]  The D.C. Circuit explained that the term "corruptly"

> must have some meaning because otherwise the statute would criminalize all attempts to "influence" congressional inquiries – an absurd result that the Congress could not have intended in enacting the statute. . . ."[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law."  In particular, a penal statute must define the criminal offense with sufficient definiteness that ordinary people can understand what conduct it prohibits, and do so in a manner that does not invite arbitrary and discriminatory enforcement by which "policemen, prosecutors, and juries ... pursue their personal predilections."
>
> In response to certain different arguments that the defendant made unsuccessfully in North I, we quoted several modern dictionary definitions of the word "corrupt":
>
> "[C]orruptly" is the adverbial form of the adjective "corrupt," which means "depraved, evil: perverted into a state of moral weakness or wickedness ... of debased political morality; characterized by bribery, the selling of political favors, or other improper political or legal transactions or arrangements." A "corrupt" intent may also be defined as "the intent to obtain an improper advantage for [one]self or someone else, inconsistent with official duty and the rights of others.". . .
>
> We must acknowledge that, on its face, the word "corruptly" is vague; that is, in the absence of some narrowing gloss, people must "guess at its meaning and differ as to its application."
> . . .
> The various dictionary definitions of the adjective "corrupt" quoted in North I do nothing to alleviate the vagueness problem involved in attempting to apply the term "corruptly" to Poindexter's conduct.

---

including making a  false or misleading statement, or withholding, concealing, altering, or destroying a document or other information."). However, by its terms, the amendment only applies to § 1505 prosecutions.

   The obstruction statute in *Poindexter* provided: "*Whoever corruptly . . . influences, obstructs, or impedes* the due and proper administration of the law under which any pending proceeding is being had. . . ." *Poindexter*, 951 F.2d at 377.  Here, § 1512(c)(2) provides "*Whoever corruptly* – . . . otherwise *obstructs, influences, or impedes* any official proceeding. . ."

> "Vague terms do not suddenly become clear when they are defined by reference to other vague terms." Words like "depraved," "evil," "immoral," "wicked," and "improper" are no more specific – indeed they may be less specific – than "corrupt." As used in § 1505, therefore, we find that the term "corruptly" is too vague to provide constitutionally adequate notice that it prohibits lying to the Congress.

*Poindexter*, 951 F.2d at 377–80.

Nothing in the legislative history of the act or legal precedents sufficiently narrows the term "corruptly" to pass constitutional muster.

Even if this Court were to consider the legislative history of § 1512(c) or the term "corruptly" as applied in this case, the statute is still unconstitutionally vague as to Hunter Seefried. As discussed above, the pertinent law interpreting the elements of § 1512(c)(2) define "corruptly" to include making false statements or encouraging others to do so; falsifying documents; or destroying evidence. But none of those circumstances are alleged in this case. Another common definition of "corruptly":

> means that in acting, the defendant aimed to obtain an "improper advantage for [himself] or someone else inconsistent with official duty and rights of others." Then someone who influences another to violate his legal duty has not acted corruptly if his purpose is, for example, to cause the enactment of legislation that would afford no particular benefit to him or anyone connected with him.

*Poindexter*, 951 F.2d at 385-86 (internal citations omitted). Again, Count One of this indictment contains no allegation that Hunter Seefried acted to gain an "improper advantage" for himself or anyone connected with him; or that he paid or received a bribe or a gratuity.

In sum, nothing in § 1512(c)(2) would have given fair notice to Hunter Seefried that if he entered the United States Capitol for a short time, without injuring anyone or actually damaging any property while associated with others seeking to petition the Congress his conduct would run afoul of 18 U.S.C. § 1512(c)(2) and subject him to imprisonment for a term of 20 years.

13

### E. COUNT ONE OF THE INDICTMENT MUST BE DISMISSED BECAUSE IT IS MULTIPLICIOUS OF OTHER COUNTS IN THE INDICTMENT AND GROSSLY OVERCHARGES THE DEFENDANT'S CONDUCT.

Rule 12(b)(3)(B) of the Federal Rules of Criminal Procedure allow a defendant to move to dismiss an indictment on the grounds that it is multiplicitous. Fed. R. Crim. P. 12(b)(3)(B). Count One of the indictment, alleges that Hunter Seefried "attempted to, and did, corruptly obstruct, influence, and impede an official proceeding, that is a proceeding before Congress, by entering and remaining in the United States Capitol without authority and engaging in disorderly and disruptive conduct and destroying federal property" in violation of 1512(c)(2) and (2). Count One is redundant, and merely duplicates offenses that the government already charged Hunter Seefried elsewhere in the indictment.

This is undoubtedly a case of the government overcharging Hunter Seefried for conduct that is more specifically proscribed elsewhere. For instance, 18 U.S.C. § 1752(a)(2), which Hunter Seefried is also charged with violating in Count Four of the indictment, prohibits a person from "knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engages in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions." Additionally, 40 U.S.C. § 5104(e)(2)(D), which Hunter Seefried is charged with violating in Count Five, prohibits violent entry and disorderly conduct on Capitol Grounds or within the Capitol Building. These statutes adequately prohibit the conduct that Hunter Seefried allegedly engaged in.

### V.  CONCLUSION

For all the above reasons, Hunter Seefried respectfully requests that this Honorable Court should dismiss Count I of the Indictment because 18 U.S.C. § 1512(c)(2) is so vague that it fails

14

to give fair notice to Hunter Seefried of the charges against him. Therefore, Count One of the indictment violates Hunter Seefried's due process rights under the Fifth Amendment, as well as his rights under the Sixth Amendment. In addition, Count One of the indictment must be dismissed because it duplicates other counts in the indictment.

Respectfully submitted,

/s/ Edson A. Bostic
Edson A. Bostic, Esquire
The Bostic Law Firm
1700 Market St., Suite 1005
Philadelphia, PA 19103
(267) 239-4693
Eab.bosticfirm@gmail.com

Attorney for Defendant,
Hunter Seefried

DATED: October 12, 2021