**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CASE NO. 21-cr-287 (TNM)** |
| **v.** | : | |
| | : | |
| **KEVIN SEEFRIED, and** | : | |
| **HUNTER SEEFRIED,** | : | |
| | : | |
| **Defendants.** | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS COUNT**
**ONE OF THE INDICTMENT: OBSTRUCTION OF AN OFFICIAL PROCEEDING**

The United States of America, by and through its attorney, the Acting United States Attorney for the District of Columbia, hereby respectfully submits this opposition to the Motions to Dismiss filed individually by defendants Kevin Seefried and Hunter Seefried. ECF 36, 37.

Defendants principally argue that Count One of the Indictment should be dismissed for failing to state an offense. Specifically, defendants allege that Count One of the Indictment fails to specify the specific "proceeding before the Congress" that was allegedly obstructed. Second, defendants argue that the certification of the Electoral College Vote—which is required by the Constitution and governed by precise statutorily prescribed requirements—is not an official proceeding as contemplated by the obstruction statute. Third, the defendants argue that the terms "corruptly" and "otherwise" are unconstitutionally vague. Fourth, defendant Hunter Seefried contends that the obstruction count is multiplicitous of other counts in the Indictment. The defendants' arguments lack merit, and their motions should be denied.

**PROCEDURAL HISTORY**

On April 7, 2021, the Grand Jury returned an eight-count Indictment charging the defendants, Kevin Seefried and Hunter Seefried, with multiple violations of federal law arising

from their alleged conduct on January 6, 2021 during the breach of the United States Capitol Building.

In sum, the Indictment alleges that Hunter Seefried broke open a window in the Senate Wing of the Capitol to enter the building for himself, Kevin Seefried, and other rioters. Once inside, the defendants unlawfully paraded inside of the Capitol and obstructed a congressional proceeding.

The Seefrieds are charged jointly in the following offenses: obstruction of an official proceeding and aiding and abetting in violation of 18 U.S.C. §§ 1512(c)(2) and 2 (Count 1); entering and remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1) (Count 2); disorderly and disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2) (Count 3); disorderly conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D) (Count 4); and parading, demonstrating, or picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G) (Count 5). Hunter Seefried is charged separately with entering and remaining on restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(4) (Count 6); destruction of government property, in violation of 18 U.S.C. § 1361 (Count 7); and act of physical violence on the Capitol Grounds or Buildings, in violation of 40 U.S.C. § 5104(e)(2)(F) (Count 8).

On October 12, 2021, the defendants filed their respective motions to dismiss Count One of the Indictment, which charges them with obstruction of an official proceeding in violation of 18 U.S.C. § 1512(c)(2).[1]

---

[1] Defendant Kevin Seefried makes factual representations in support of his motion. Without conceding that these factual representations are accurate, and noting that it disagrees with some of them, the government will not address the factual portion of Kevin Seefried's motion because a motion to dismiss is a purely legal matter and not the proper forum to litigate factual disputes.

## **LEGAL STANDARD**

A defendant may move to dismiss an indictment or count thereof for failure to state a claim prior to trial.  *See* Fed. R. Crim. P. 12(b)(3)(B)(v). "[A]n indictment must be viewed as a whole, and the allegations must be accepted as true in determining if an offense has been properly alleged." *United States v. Bowdoin*, 770 F. Supp. 2d 142, 146 (D.D.C. 2011).  The operative question is whether the allegations, if proven, would be sufficient to permit a jury to find that the crimes charged were committed. *Id.* "An indictment must contain every element of the offense charged, if any part or element is missing, the indictment is defective and must be dismissed."  *See United States v. Hillie*, 227 F. Supp. 3d 57, 70 (D.D.C. 2017).

Section 1512(c)(2) of Title 18 of the U.S. Code provides that "[w]hoever corruptly . . . obstructs, influences, or impedes any official proceeding, or attempts to do so, shall be fined under this title or imprisoned not more than 20 years, or both." The "Definitions" provision, 18 U.S.C. § 1515, states that "[a]s used in section[] 1512," (1) the term 'official proceeding' means— (A) a proceeding before a judge or court of the United States … or a Federal grand jury;" (B) a proceeding before the Congress; (C) a proceeding before a Federal Government agency which is authorized by law; or (D) a proceeding involving the business of insurance … before any insurance regulatory official or agency…." 18 U.S.C. § 1515(a)(1). A person violates that statute when, acting with the requisite *mens rea*, he engages in conduct that obstructs a specific congressional proceeding. *See* 18 U.S.C. § 1512(c)(2); § 1515(a)(1)(B).

## ARGUMENT

**I.      Defendants have adequate notice of the "official proceeding" they are charged with obstructing.**

The defendants first contend that Count One of the Indictment fails to sufficiently allege the specific "official proceeding" that was obstructed. To be sufficient under the Constitution, an indictment "need only inform the defendant of the precise offense of which he is accused so that he may prepare his defense and plead double jeopardy in any further prosecution for the same offense." *United States v. Verrusio*, 762 F.3d 1, 13 (D.C. Cir. 2014); *see United States v. Resendiz-Ponce*, 549 U.S. 102, 110 (2007). Federal Rule of Criminal Procedure 7(c)(1) governs the "Nature and Contents" of an indictment. The rule states, in relevant part, that "[t]he indictment … must be a plain, concise, and definite written statement of the essential facts constituting the offense charged," and that "[f]or each count, the indictment or information must give the official or customary citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated." An indictment must contain every element of the offense charged, if any part or element is missing, the indictment is defective and must be dismissed." *See Hillie*, 227 F. Supp. 3d at 70.

The indictment here readily meets this standard. Section 1512(c)(2) penalizes a person who "corruptly obstructs, influences, or impedes any official proceeding." Count One of the indictment provides that:

> On or about January 6, 2021, within the District of Columbia and elsewhere, defendants, **KEVIN SEEFRIED** and **HUNTER SEEFRIED**, attempted to, and did, corruptly obstruct, influence, and impede an official proceeding, that is, a proceeding before Congress, by entering and remaining in the United States Capitol without authority and engaging in disorderly and disruptive conduct and destroying federal property.

ECF No. 20. Thus, the plain text of the Indictment tracks the statutory language, while also identifying the precise date—January 6, 2021—on which and the precise location—the U.S.

Capitol—where the alleged obstruction of an official proceeding took place. Nothing more is needed.

Nonetheless, the government also has provided ample notice to the defendants regarding the nature of the obstruction charge, including the fact that the defendants' conduct is alleged to have occurred during the Joint Session of Congress to affirm the Electoral College vote. Specifically, the government has provided defendants with the Complaint, which includes not only a statement of facts outlining what occurred generally on January 6, 2021 during the Capitol breach, but also the facts that specifically pertain to the Seefrieds and their alleged conduct on that day. Additionally, the government has provided defendants with ample discovery, including law enforcement reports, with admissions by both defendants regarding their conduct during the breach and  photographic evidence of the defendants inside of the United States Capitol on January 6, 2021. Thus, the defendants can hardly say that they are not on notice of the government's allegation related to the obstruction of government proceedings.

## II.   Section 1512(c)(2)'s text, structure, and history confirm that its prohibition on obstructive conduct covers the defendants' actions on January 6, 2021.

In Section 1512(c)(2), Congress comprehensively prohibited conduct that intentionally and wrongfully obstructs official proceedings. The ordinary meaning of "obstruct[], influence[], or impede[]" encompasses a wide range of conduct designed to frustrate an official proceeding. That conduct can include lying to a grand jury or in civil proceedings, exposing the identity of an undercover agent, and burning a building to conceal the bodies of murder victims. It also includes storming into the Capitol to derail a congressional proceeding. A defendant who, acting with the necessary *mens rea*, obstructs (or attempts to obstruct) Congress's certification of the Electoral College vote, commits a crime under Section 1512(c)(2).

1. Section 1512(c)(2)'s text and structure demonstrate that it serves as a comprehensive prohibition on corrupt conduct that intentionally obstructs or impedes an official proceeding. When interpreting a statute, courts look first to the statutory language, "giving the words used their ordinary meaning." *Lawson v. FMR LLC*, 571 U.S. 429, 440 (2014) (internal quotation marks omitted). If the statutory language is plain and unambiguous, this Court's "inquiry begins with the statutory text, and ends there as well." *National Ass'n of Mfrs. v. Department of Defense*, 138 S. Ct. 617, 631 (2018) (internal quotation marks omitted). Here, the meaning of "obstruct[], influence[], or impede[]" is controlled by the ordinary meaning of those words.

The verbs Congress selected in Section 1512(c)(2) reach broadly. For example, the words "obstruct" and "impede" can "refer to anything that 'blocks,' 'makes difficult,' or 'hinders.'" *Marinello v. United States*, 138 S. Ct. 1101, 1106 (2018) (brackets omitted) (citing dictionaries). Similarly, "influence" includes "affect[ing] the condition of" or "hav[ing] an effect on." *Influence*, Oxford English Dictionary, *available at* http://www.oed.com. By their plain meaning, therefore, the string of verbs in Section 1512(c)(2) are properly viewed as "expansive" in their coverage. *See United States v. Burge*, 711 F.3d 803, 809 (7th Cir. 2013).

Section 1512(c)'s structure confirms that straightforward interpretation. Section 1512(c) consists of two provisions, which both require the defendant to act "corruptly." First, Section 1512(c)(1) criminalizes "alter[ing], destroy[ing], mutilat[ing], or conceal[ing] a record, document, or other object . . . with the intent to impair the object's integrity or availability for use in an official proceeding." Section 1512(c)(2), by contrast, applies more generally to any acts that "otherwise obstruct[], influence[], or impede[]" an official proceeding. The term "otherwise," consistent with its ordinary meaning, conveys that Section 1512(c)(2) encompasses misconduct that threatens an official proceeding "beyond [the] simple document destruction" that Section 1512(c)(1) proscribes. *Id.; United States v. Petruk*, 781 F.3d 438, 446-47 (8th Cir. 2015) (noting that

"otherwise" in Section 1512(c)(2), understood to mean "in another manner" or "differently," implies that the obstruction prohibition in that statute applies "without regard to whether the action relates to documents or records") (internal quotation marks omitted); *see also United States v. Ring*, 628 F. Supp. 2d 195, 224 n.17 (D.D.C. 2009) (noting that Section 1512(c)(2) is "plainly separate and independent of" Section 1512(c)(1), and declining to read "otherwise" in Section 1512(c)(2) "as limited by § 1512(c)(1)'s separate and independent prohibition on evidence-tampering"); *Otherwise*, Oxford English Dictionary, *available at* http://www.oed.com (defining otherwise as "in another way" or "in any other way"); *see also Gooch v. United States*, 297 U.S. 124, 127-28 (1936) (characterizing "otherwise" as a "broad term" and holding that a statutory prohibition on kidnapping "for ransom or reward or otherwise" is not limited by the words "ransom" and "reward" to kidnappings for pecuniary benefit); *Collazos v. United States*, 368 F.3d 190, 200 (2d Cir. 2004) (construing "otherwise" in 28 U.S.C. § 2466(1)(C) to reach beyond the "specific examples" listed in prior subsections, thereby covering the "myriad means that human ingenuity might devise to permit a person to avoid the jurisdiction of a court").

In this way, Section 1512(c)(2) criminalizes the same *result* prohibited by Section 1512(c)(1)—obstruction of an official proceeding—when that result is accomplished by a different *means, i.e.*, by conduct other than destruction of a document, record, or other object. *Cf. United States v. Howard*, 569 F.2d 1331, 1333 (5th Cir. 1978) (explaining that 18 U.S.C. § 1503, which criminalizes the result of obstructing the due administration of justice, provides specific means of accomplishing that result and then a separate catch-all clause designed to capture other means). Section 1512(c)(2), in other words, "operates as a catch-all to cover otherwise obstructive behavior that might not constitute a more specific" obstruction offense involving documents or records under Section 1512(c)(1). *Petruk*, 781 F.3d at 447 (quoting *United States v. Volpendesto*, 746 F.3d 273, 286 (7th Cir. 2014)); *cf. United States v. Aguilar*, 515 U.S. 593, 598 (1995) (describing similar

"[o]mnibus" clause in 18 U.S.C. § 1503 as a catchall that is "far more general in scope than the earlier clauses of the statute").

Consistent with that interpretation, courts have upheld convictions under Section 1512(c)(2) for defendants who attempted to secure a false alibi witness while in jail for having stolen a vehicle, *Petruk*, 781 F.3d at 440, 447; disclosed the identity of an undercover federal agent to thwart a grand jury investigation, *United States v. Phillips*, 583 F.3d 1261, 1265 (10th Cir. 2009); lied in written responses to civil interrogatory questions about past misconduct while a police officer, *Burge*, 711 F.3d at 808-09; testified falsely before a grand jury, *United States v. Carson*, 560 F.3d 566, 584 (6th Cir. 2009); solicited information about a grand jury investigation from corrupt "local police officers," *Volpendesto*, 746 F.3d at 286; and burned an apartment to conceal the bodies of two murder victims, *United States v. Cervantes*, No. 16-10508, 2021 WL 2666684, at *6 (9th Cir. June 29, 2021) (unpublished); *see also United States v. Martinez*, 862 F.3d 223, 238 (2d Cir. 2017) (police officer tipped off suspects before issuance or execution of search warrants), *vacated on other grounds*, 139 S. Ct. 2772 (2019); *United States v. Ahrensfield*, 698 F.3d 1310, 1324-26 (10th Cir. 2012) (law enforcement officer disclosed existence of undercover investigation to target).

Here, Section 1512(c)(2) also applies to the defendants' alleged conduct, which involved breaking a window to enter, and allow other to enter into the Senate Wing of the Capitol Building, and demonstrating inside of the Capitol Building.  In so doing, the defendants hindered and delayed the certification of the Electoral College vote, an "official proceeding" as that term is defined in the obstruction statute. *See* 18 U.S.C. § 1515(a)(1)(B). Because construing Section 1512(c)(2) to reach that conduct would neither "frustrate Congress's clear intention" nor "yield patent absurdity," this Court's "obligation is to apply the statute as Congress wrote it." *Hubbard v. United States*, 514 U.S. 695, 703 (1995) (internal quotation marks omitted).

In contrast, reading Section 1512(c)(2) as limited only to obstructive acts akin to the document destruction or evidence tampering captured in Section 1512(c)(1) suffers at least three flaws. *First*, it would give rise to unnecessarily complex questions about what sort of conduct qualifies as "similar to but different from" the proscribed conduct "described in [Section 1512](c)(1)." *United States v. Singleton*, No. 06-CR-80, 2006 WL 1984467, at *3 (S.D. Tex. July 14, 2006) (unpublished); *see id.* (concluding that Section 1512(c)(2) "require[s] some nexus to tangible evidence, though not necessarily tangible evidence already in existence"); *see also United States v. Hutcherson*, No. 05-CR-39, 2006 WL 270019, at *2 (W.D. Va. Feb. 3, 2006) (unpublished) (concluding that a violation of Section 1512(c)(2) requires proof that "an individual corruptly obstructs an official proceedings [*sic*] through his conduct in relation to a tangible object"). So construed, for example, Section 1512(c)(2) may not encompass false statements made to obstruct a proceeding—though courts have widely upheld convictions for such conduct. *See Petruk*, 781 F.3d at 447 (collecting cases).

*Second*, limiting Section 1512(c)(2) in that way would effectively render that provision superfluous considering the comprehensive prohibitions against document and evidence destruction in both Sections 1512(c)(1) and 1519. *See Yates*, 574 U.S. at 541 n.4 (plurality opinion) (Section 1512(c)(1) provides a "broad ban on evidence-spoliation") (internal quotation marks omitted). By contrast, the straightforward interpretation that treats Section 1512(c)(2) as a catch-all for corrupt obstructive conduct not covered by Section 1512(c)(1) would "give effect to every clause and word" of Section 1512(c). *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 385 (2013); *cf. United States v. Poindexter*, 951 F.2d 369, 385 (D.C. Cir. 1991) (explaining that limiting the catch-all provision in Section 1503's omnibus clause to obstructive acts "directed against individuals" would render that catch-all superfluous because "earlier, specific[] prohibitions" in Section 1503 "pretty well exhaust such possibilities") (internal quotation marks omitted); *United States v. Watt*,

911 F. Supp. 538, 546 (D.D.C. 1995) (rejecting interpretation of the Section 1503 omnibus clause that would "serve no other purpose than to prohibit acts already prohibited in the first part of the statute" because that reading would "reduce[] the omnibus clause to mere redundancy").

*Third*, importing into Section 1512(c)(2) a nexus-to-tangible-evidence-or-documents requirement would require inserting an extratextual gloss that would render the verbs in Section 1512(c)(2) nonsensical. *See Dean v. United States*, 556 U.S. 568, 572 (2009) (courts "ordinarily resist reading words or elements into a statute that do not appear on its face") (internal quotation marks omitted). The *actus reus* that those verbs encompass is obstructing, influencing, and impeding; a defendant cannot "obstruct" a document or "impede" a financial record. *Cf. Yates*, 574 U.S. at 551 (Alito, J., concurring) (rejecting interpretation of "tangible object" in Section 1519 that would include a fish in part because of a mismatch between that potential object and the statutory verbs: "How does one make a false entry in a fish?"); *id.* at 544 (plurality opinion) ("It would be unnatural, for example, to describe a killer's act of wiping his fingerprints from a gun as 'falsifying' the murder weapon.").

2. Because "the statutory language provides a clear answer," the construction of Section 1512(c)(2) "ends there" and it is unnecessary to resort to legislative history. *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999); *see Chamber of Commerce of U.S. v. Whiting*, 563 U.S. 582, 599 (2011) ("Congress's authoritative statement is the statutory text, not the legislative history.") (internal quotation marks omitted); *see also United States v. De Bruhl-Daniels*, 491 F. Supp. 3d 237, 251-52 (S.D. Tex. 2020) (declining to consider Section 1512's legislative history in rejecting the claim that the statute was limited to document destruction).

Following the collapse of the Enron Corporation, Congress passed the Sarbanes-Oxley Act of 2002. Pub. L. No. 107-204, 116 Stat. 745; *see Yates*, 574 U.S. at 535 (plurality opinion). That legislation, which principally aimed to "prevent and punish corporate fraud, protect the victims of

such fraud, preserve evidence of such fraud, and hold wrongdoers accountable for their actions," S. Rep. No. 107-146, at 2 (2002), included several different provisions, *id.* at 11 (describing different components of the law); *see also* 148 Cong. Rec. H4683-84 (daily ed. July 16, 2002) (outlining new provisions). Foremost among them were two new criminal statutes, 18 U.S.C. § 1519 and 18 U.S.C. § 1520, which were intended to "clarify and close loopholes in the existing criminal laws relating to the destruction or fabrication of evidence and the preservation of financial and audit records." S. Rep. No. 107-146, at 14. The Senate Judiciary Committee Report on the Sarbanes-Oxley Act discussed those two provisions in detail. *See id.* at 14-16.

By contrast, the Sarbanes-Oxley Act's legislative history provides limited explanation of Congress's objective in enacting Section 1512(c). The only discussion of Section 1512 in the Senate Judiciary Committee Report, for example, noted that the pre-existing prohibition in Section 1512(b) made it a crime to induce "another person to destroy documents, but not a crime for a person to destroy the same documents personally"—a limitation that "forced" prosecutors to "proceed under the legal fiction that the defendants [in then-pending *United States v. Arthur Andersen*] are being prosecuted for telling other people to shred documents, not simply for destroying evidence themselves." S. Rep. No. 107-146, at 6-7. Similarly, Senator Hatch observed that the legislation "broaden[ed]" Section 1512 by permitting prosecution of "an individual who acts alone in destroying evidence." 148 Cong. Rec. S6550 (daily ed. July 10, 2002) (statement of Sen. Hatch). At a minimum, nothing in these passing references casts doubt on the plain meaning of Section 1512(c)(2), which is reflected in the interpretation described above.

Section 1512(c) also differed from the newly enacted Sections 1519 and 1520 in that Congress added the former to an existing statutory section: Section 1512. *See Yates*, 574 U.S. at 541 (plurality opinion) (noting that, unlike Section 1519, Section 1512(c)(2) was placed among the "broad proscriptions" in the "pre-existing" Section 1512). Moreover, although Section 1512(c)

as enacted in the Sarbanes-Oxley Act recognized two distinct prohibitions, *see* Pub. L. No. 107-204, § 1102, 116 Stat. 807 ("Tampering with a record *or* otherwise impeding an official proceeding") (emphasis added; capitalization altered), Congress did not amend Section 1512's title. That title, "Tampering with a witness, victim, or an informant," § 1512, thus encompassed the pre-existing provisions aimed at a defendant's obstructive conduct directed toward another person,[2] but did not reflect the newly enacted prohibitions in Section 1512(c) that criminalized a defendant's own obstructive act, either through destroying documents (§ 1512(c)(1)) or otherwise impeding a proceeding (§ 1512(c)(2)). *See Yates*, 574 U.S. at 541 n.4 (plurality opinion) (noting that Congress added Section 1512(c)(1), which covered evidence-spoliation, to Section 1512 "even though § 1512's preexisting title and provisions all related to witness-tampering").

Section 1512(c)'s legislative and statutory history thus offers two reasons to interpret Section 1512(c)(2) consistently with its plain text and structure. First, Section 1512(c) aimed at closing a "loophole" in Section 1512: the existing prohibitions did not adequately criminalize a defendant's *personal* obstructive conduct *not* aimed at another person. *See* 148 Cong. Rec. S6550 (daily ed. July 10, 2002) (statement of Sen. Hatch). Read together in this light, Section 1512(c)(1) criminalizes a defendant's firsthand destruction of evidence (without having to prove that the defendant induced another person to destroy evidence) in relation to an official proceeding, and Section 1512(c)(2) criminalizes a defendant's firsthand obstructive conduct that *otherwise* impedes or influences an official proceeding (though not necessarily through another person). *See Burge*, 711 F.3d at 809-10. Second, no substantive inference is reasonably drawn from the fact

---

[2] *See* § 1512(a) (applies to killing, attempting to kill, or using physical force or the threat of physical force against a person to prevent testimony or induce a witness to withhold information); § 1512(b) (applies to using intimidation, threats, or corrupt persuasion against a person to prevent testimony or hinder, delay, or prevent communication of information to law enforcement or the courts); § 1512(d) (applies to intentionally harassing another person to hinder, delay, or prevent that person from taking certain actions).

that the title of Section 1512 does not precisely match the "broad proscription" it in fact contains, given that the Sarbanes-Oxley Act unequivocally and broadly entitled the new provisions now codified in Section 1512(c), "Tampering with a record *or* otherwise impeding an official proceeding." Pub. L. No. 107-204, § 1102, 116 Stat. 807 (emphasis added; capitalization altered). Section 1512's title is more limited simply because Congress did not amend the pre-existing title when it added the two prohibitions in Section 1512(c) in 2002. *Cf. Brotherhood of R.R. Trainmen v. Baltimore & Ohio R.R. Co.*, 331 U.S. 519, 528-29 (1947) (describing "the wise rule that the title of a statute and the heading of a section cannot limit the plain meaning of the text"). Thus, although the plain text and structure of Section 1512(c) renders a review of the legislative history unnecessary, the limited legislative history of the statute supports its application to the defendants' alleged conduct.

1. **18 U.S.C. §1512(c)(2) provided the defendants fair notice that their behavior was unlawful because the statute clearly prohibits wrongfully impeding or obstructing congressional proceedings.**

18 U.S.C. §1512(c)(2) does not violate due process because the statute puts defendants on notice by prohibiting the obstruction of congressional proceedings. First, the defendants look to the Supreme Court's Decision in *United States v. Johnson*, 576 U.S. 591 (2015), to assert that 18 U.S.C. §1512(c)(2) is vague by alleging that the statute is too speculative despite the statutes clear language compared to *Johnson*. Next, the defendants claim that the "corruptly" terminology used in the statute is unconstitutionally vague. Those claims lack merit.

The Due Process Clauses of the Fifth and Fourteenth Amendments prohibit the government from depriving any person of "life, liberty, or property, without due process of law." U.S. Const. amends. V, XIV. An outgrowth of the Due Process Clause, the "void for vagueness" doctrine prevents the enforcement of a criminal statute that is "so vague that it fails to give ordinary people

fair notice of the conduct it punishes" or is "so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015). To ensure fair notice, "'[g]enerally, a legislature need do nothing more than enact and publish the law and afford the citizenry a reasonable opportunity to familiarize itself with its terms and to comply.'" *United States v. Bronstein*, 849 F.3d 1101, 1107 (D.C. Cir. 2017) (quoting *Texaco, Inc. v. Short*, 454 U.S. 516, 532 (1982)). To avoid arbitrary enforcement, the law must not "vest[] virtually complete discretion" in the government "to determine whether the suspect has [violated] the statute." *Kolender v. Lawson*, 461 U.S. 352, 358 (1983).

A statute is not unconstitutionally vague simply because its applicability is unclear at the margins, *United States v. Williams*, 553 U.S. 285, 306 (2008), or because a reasonable jurist might disagree on where to draw the line between lawful and unlawful conduct in particular circumstances, *Skilling v. United States*, 561 U.S. 358, 403 (2010). "'Even trained lawyers may find it necessary to consult legal dictionaries, treatises, and judicial opinions before they may say with any certainty what some statutes may compel or forbid.'" *Bronstein*, 849 F.3d at 1107 (quoting *Rose v. Locke*, 423 U.S. 48, 50 (1975) (per curiam)). Rather, a provision is impermissibly vague only if it requires proof of an "incriminating fact" that is so indeterminate as to invite arbitrary and "wholly subjective" application. *Williams*, 553 U.S. at 306; *see Smith v. Goguen*, 415 U.S. 566, 578 (1974). The "touchstone" of vagueness analysis "is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *United States v. Lanier*, 520 U.S. 259, 267 (1997).

A statutory provision is therefore "not rendered unconstitutionally vague because it 'do[es] not mean the same thing to all people, all the time, everywhere.'" *Bronstein*, 849 F.3d at 1107 (quoting *Roth v. United States*, 354 U.S. 476, 491 (1957)). A statute is instead vague where it fails to specify any "standard of conduct . . . at all." *Coates v. Cincinnati*, 402 U.S. 611, 614 (1971).

"As a general matter," however, a law is not constitutionally vague where it "call[s] for the application of a qualitative standard . . . to real-world conduct; 'the law is full of instances where a man's fate depends on his estimating rightly . . . some matter of degree.'" *Johnson*, 576 U.S. at 603-04 (quoting *Nash v. United States*, 229 U.S. 373, 377 (1913)).

Relying on *Johnson*, the defendants claim that  Section 1512(c)(2) is too speculative. But *Johnson* is inapplicable here. In *Johnson*, the Supreme Court held that the residual clause which governed sentencing enhancements for those who violated the Armed Career Criminal Act (ACCA) was unconstitutionally vague. *Id*. at 597. The residual clause in the ACCA enhanced a defendant's sentence if the violation "involve[d] conduct that present[ed] a serious potential risk of physical injury to another." *Id*. The court reasoned that the specific residual clause in the ACCA was void for vagueness because the clause was unclear on both how to estimate the risk posed by the crime and how much risk is necessary to qualify for the enhancement which led to arbitrary enforcement. The defense here points to the wide-ranging acts that violated 18 U.S.C. §1512(c)(2) on January 6, 2021, to assert that the government's enforcement of the statute is inconsistent. However, the defendants identify no cases or other evidence indicating that application Section 1512(c)(2)'s obstruction prohibition to breaking into the Capitol Building by breaking a window, thereby permitting entry of the defendants of others, and thereafter parading and demonstrating inside of the Building, all without authorization.

Furthermore, the defendants' claim that the word "corruptly" in Section 1512(c)(2) is unconstitutionally vague is also mistaken. To violate Section 1512(c)(2), the defendant must act "corruptly."  To prove a defendant acted "corruptly" for purposes of Section 1512(c)(2), the government must prove the defendant acted (1) with intent to obstruct, impede, or influence; and (2) wrongfully.

Because "'corruptly'" is not defined in the statute, it is "understood . . . to have its ordinary meaning." *United States v. North*, 910 F.2d 843, 881 (D.C. Cir. 1990) (per curiam), *withdrawn and superseded in part by United States v. North*, 920 F.2d 940 (D.C. Cir. 1990) (per curiam). In *Poindexter*, the D.C. Circuit suggested, while construing 18 U.S.C. § 1505,[3] that "'corruptly'" was "vague . . . in the absence of some narrowing gloss." 951 F.2d at 378. After surveying the obstruction statute's legislative history (including the "[o]rigins" of Sections 1503 and 1505) and case law interpreting Section 1505, the court reversed the defendant's conviction because Section 1505 failed to provide "constitutionally required notice" that the defendant's conduct—making false and misleading statements to Congress—fell within the statute's scope. *Id.* at 380, 386. The court disclaimed any conclusion that "'corruptly'" in Section 1505 was "unconstitutionally vague as applied to all conduct." *Id.* at 385. The court also declined to adopt as a standard that "'corruptly' means that in acting, the defendant aimed to obtain an 'improper advantage for [himself] or someone else inconsistent with official duty and rights of others.'" *Id.* at 385-86 (quoting *North*, 910 F.2d at 881-82).

For purposes of Section 1512(c)(2), "corruptly" includes two components: (1) intent to obstruct, impede, or influence; and (2) wrongfulness. *See United States v. Friske*, 640 F.3d 1288, 1291 (11th Cir. 2011) (to act "corruptly" is to act "with an improper purpose" and "with the specific intent to subvert, impede or obstruct") (quoting *United States v. Mintmire*, 507 F.3d 1273, 1289 (11th Cir. 2007)); *United States v. Gordon*, 710 F.3d 1124, 1151 (10th Cir. 2013) (same); *United States v. Watters*, 717 F.3d 733, 735 (9th Cir. 2013) (upholding jury instruction defining "corruptly" as acting with "consciousness of wrongdoing") (internal quotation marks omitted);

---

[3] Section 1505 applies to "[w]hoever corruptly . . . influences, obstructs, or impedes or endeavors to influence, obstruct, or impede . . . the due and proper exercise of the power of inquiry under which any inquiry or investigation is being had by either House, or any committee of either House or any joint committee of the Congress." 18 U.S.C. § 1505.

*United States v. Matthews*, 505 F.3d 698, 705 (7th Cir. 2007) (upholding instruction defining "[c]orruptly" as acting "with the purpose of wrongfully impeding the due administration of justice"); Seventh Circuit Pattern Criminal Jury Instruction for § 1512(c) ("A person acts 'corruptly' if he or she acts with the purpose of wrongfully impeding the due administration of justice."). That the term "corruptly" requires the government to prove that a defendant acted not only with intent to obstruct but also with "consciousness of wrongdoing" ensures that Section 1512(c)(2) "reaches only" those who have committed felony obstruction.[4] *Arthur Andersen LLP v. United States*, 544 U.S. 696, 706 (2005). That limitation is particularly important where, as here, the defendants are alleged to have obstructed a congressional proceeding. *See North*, 910 F.2d at 882 (noting that an "executive branch official" or a "political activist" may seek to persuade a representative to "stop[] spending her time pursuing a certain investigation" but instead pursue "some other legislative endeavor"; that conduct could be viewed as "endeavoring to impede or obstruct the investigation, but it is not necessarily doing so corruptly").

To prove that an attempted or actual obstruction of a congressional proceeding amounts to felony obstruction in violation of 18 U.S.C. § 1512(c)(2), the government must therefore adduce evidence establishing beyond a reasonable doubt that a defendant acted intentionally and with "consciousness of wrongdoing." *Andersen*, 544 U.S. at 706. That standard could be met where, for example, evidence showed that defendants joined a mob that was pushing to enter the Capitol building, penetrated the Capitol building by breaking a window (Hunter Seefried), and entered the Capitol Building without authorization through a broken window and without undergoing security screening as required.

---

[4] Although Section 1512(c)(2)'s statutory text does not include the modifier "knowingly," the statute does require that the defendant "engage in conduct knowingly." *Gordon*, 710 F.3d at 1151; *Friske*, 640 F.3d at 1291.

The defendants' reliance on the D.C. Circuit's decision in *Poindexter*, *supra*, is also inapposite. First, the D.C. Circuit narrowly confined *Poindexter*'s analysis to Section 1505's use of "corruptly," and expressly declined to hold "that term unconstitutionally vague as applied to all conduct."  951 F.2d at 385. Five years later, in *United States v. Morrison*, 98 F.3d 619 (D.C. Cir. 1996), the D.C. Circuit rejected a *Poindexter*-based vagueness challenge to 18 U.S.C. § 1512(b) and affirmed the conviction of a defendant for "corruptly" influencing the testimony of a potential witness at trial. *Id*. at 629-30. Other courts have similarly recognized "the narrow reasoning used in *Poindexter*" and "cabined that vagueness holding to its unusual circumstances."  *United States v. Edwards*, 869 F.3d 490, 502 (7th Cir. 2017); *see also, e.g*., *United States v. Kelly*, 147 F.3d 172, 176 (2d Cir. 1998) (rejecting vagueness challenge to "corruptly" in 26 U.S.C. § 7212(a)); *United States v. Shotts*, 145 F.3d 1289, 1300 (11th Cir. 1998) (same for 18 U.S.C. § 1512(b)); *United States v. Brenson*, 104 F.3d 1267, 1280 (11th Cir. 1997) (same for 18 U.S.C. § 1503). The defendants' invocation of *Poindexter* accordingly fails to establish that Section 1512(c) suffers the same constitutional indeterminacy.

Second, *Poindexter* predated the Supreme Court's decision in *Arthur Andersen LLP v. United States*, 544 U.S. 696 (2005). There, the Court explained the terms "'[c]orrupt" and 'corruptly' are normally associated with wrongful, immoral, depraved, or evil." *Id*. at 705 (citation omitted). In doing so, the Court "did not imply that the term was too vague." *Edwards*, 869 F.3d at 502. Third, and as noted above, courts have encountered little difficulty when addressing "corruptly" in Section 1512(c)(2) following *Arthur Andersen*. *See supra*, at 18-19. Such efforts demonstrate that the statute's "corruptly" element does not invite arbitrary or wholly subjective application by either courts or juries.

**2. The congressional certification of the Electoral College vote is an official proceeding because of its adjudicative function and formality.**

The defendants' claims that the congressional certification process is not an "official proceeding" is misguided because 18 U.S.C. § 1515(a)(1)(B) explicitly states that "a proceeding before the Congress" is an "official proceeding" for the purposes of 18 U.S.C. § 1512(c)(2). Even if the definition had not been so specifically laid out by 18 U.S.C. § 1515, formal and colloquial definitions put the congressional certification of electoral votes squarely within the realm of an "official proceeding."   Thus, the defendants violated 18 U.S.C. § 1512(c)(2) by halting the electoral college certification process when they stormed the Capitol Building on January 6, 2021.

Defendants assert that the certification is a ceremonial process that lacks the adjudicative elements required of an "official proceeding;" however, the certification process is a far cry from a mere ceremonial gesture. The certification process, over which the Vice President presides, involves calling for a joint session of Congress to evaluate the results of each state's electoral college votes. Congress then considers whether to count the certified results under Electoral Count Act. 3 U.S.C. § 15; see Vasan Kesavan, *Is the Electoral Count Act Unconstitutional*?, 80 N.C. L. Rev. 1653, 1659 (2002) (under the Electoral Count Act, "the President-elect is not elected by 'We the People' on election day, or even by the electors on the day they cast their votes, but by the joint convention of the Senate and House of Representatives on the day the electoral votes are formally counted"). Objections can be submitted by members of Congress which are then deliberated by each house as to whether those objections are sustained or overruled. Thus, the defense's argument that the congressional certification lacks the adjudicative elements required of an official proceeding lacks merit.

Next, the cases the defendants point to only bolster the Certification's credentials as an official proceeding because of its formality. When determining if an investigation is an official

proceeding, for example, courts have evaluated the formality involved in those investigations. On one hand, interfering with an "internal informal investigation, in its most preliminary stages, of employee violations of an agency policy is not an 'official proceeding' within the meaning of § 1512(c)." *United States v. Ramos*, 537 F.3d 439, 463 (5th Cir.2008). However, an investigation may turn into an official proceeding when, like in *United States v. Perez*, "its work is sufficiently formal to satisfy the "official proceeding" element of subsection 1512(c)(1)." 575 F.3d 164, 169 (2d Cir. 2009) (internal quotations omitted). In *Perez*, a Bureau of Prisons (BOP) internal investigation was found to be an "official proceeding" because it had reached a stage in the investigation where "a body of senior officials" were tasked with "quasi-adjudicative responsibilities" which included making "findings" to "determine" if violations occurred and then "decide" on a course of action. *Id.* The degree of formality regarding BOP investigatory committees pale in comparison when held against the members of the United States Congress, under the leadership of the Vice President, making findings to determine if a United States presidential election was conducted properly and then deciding whether to certify the results of each state's Electoral College votes. Thus, any argument which calls into question the formality of the congressional certification is unfounded.

In closing, the United States Court of Appeals for the Fourth Circuit articulately addressed the crux of the matter regarding the obstruction of official proceedings, specifically grand jury proceedings in that case, when it said:

> Official proceedings are crucial to the conduct of government. They are entitled to go forward free of corrupting influences that not only delay them but increase the chances of false and unjust outcomes… The government has every right to prosecute those who would corrupt it. Compromised proceedings in turn diminish public confidence in the workings of government and lead to the sort of creeping cynicism toward it that affects so many nations. [Obstruction] statutes help to protect against that eventuality here.

*United States v. Sutherland*, 921 F.3d 421, 427 (4th Cir. 2019). Here, it is imperative that the congressional certification process be allowed to function free of "corrupting influences" to avoid unjust outcomes or even the perception of an unjust outcome to ensure the public confidence in the presidential election and the fundamental principles of the republic. Since the defendants have failed to provide a compelling argument that 18 U.S.C. §1512(C)(2) is unconstitutional as applied here and the importance of the Electoral College certification process, the motions to be dismissed should be denied.

### 3. Count One is not multiplicitous of Counts Four and Five of the Indictment.

Defendant Hunter Seefried argues that Count One of the Indictment is redundant and merely duplicates Count Four and Count Five of the Indictment. Because these are separate statutes with different elements, this claim fails.

In determining whether Congress intended to punish as separate offenses conduct occurring in the same transaction, absent otherwise clearly expressed intent, courts apply the rule announced in *Blockburger v. United States*, 284 U.S. 299, 304 (1932): "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." Here, it clear that Counts One, Four, and Five of the Indictment, while overlapping, each requires proof of a fact which the other does not. Count One is the obstruction of justice count, described extensively above. Count Four charges Hunter Seefried with disorderly conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D). Count Five charges Seefried with parading, demonstrating, or picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G). Each of the charged offenses is a separate statutory violation and requires the government to prove different elements. For the obstruction count, the government must prove that Seefried: (1) knowingly obstructed, influenced, or impeded any official proceeding; and (2)

that he did so corruptly. To prove that the defendant committee the violation of disorderly conduct in a Capitol Building, the government must prove that the defendant: (1) engaged in disorderly or disruptive conduct, (2) that the conduct occurred at any place in the Grounds or in any of the Capitol Buildings, and (3) intended to impede, disrupt, or disturb the orderly conduct of Congress. Finally, to prove Count Five, the government must prove that the defendant: (1) paraded, demonstrated, or picketed inside of the Capitol Building; and (2) that he did so knowingly. The elements of he charged offenses are therefore distinguishable.

As applied to the specific facts of this case, the government's burden of proving that Hunter Seefried knowingly entered the Capitol Building while walking inside and chanting is not the same burden that the government must satisfy in proving that he obstructed an official proceeding. For the obstruction charge, the government will offer evidence to show that the defendants' conduct prior to and during this event, such as his words and actions, prove his corrupt intent. The government will also offer evidence regarding the defendants' violent entry into the Capitol Building. And while the same consideration for of the defendants' entry will be considered for the misdemeanor violation of disorderly conduct, Courts have ruled that overlap in charging schemes is neither uncommon nor objectionable. The mere fact that multiple criminal statutes apply to an individual's conduct does not render prosecution under one (or more) of those statute suspect; indeed, "overlap" is "not uncommon in [federal] criminal statutes." *Loughrin v. United States*, 573 U.S. 351, 358 n.4 (2014); *accord Hubbard v. United States*, 514 U.S. 695, 714 n.14 (1995) (opinion of Stevens, J.) ("Congress may, and often does, enact separate criminal statutes that may, in practice, cover some of the same conduct."); *see also United States v. Batchelder*, 442 U.S. 114, 123 (1979) ("So long as overlapping criminal provisions clearly define the conduct prohibited and the punishment authorized, the notice requirements of the Due Process Clause are satisfied.").

There is no express prohibition in the government charging multiple felonious acts and misdemeanor acts that cover some of the same or similar conduct. The government is aware of its burden of proving each count of the Indictment, as well as its duty to provide adequate notice of the evidence supporting each charged offense. Because the charges identified by defendant Hunter Seefried are not multiplicitous, his motion to dismiss should be denied on these grounds as well.

## **CONCLUSION**

For the foregoing reasons, and any additional reasons as may be cited at a hearing on this motion, the government respectfully requests that the defendants' motion be denied.

Respectfully submitted,

CHANNING D. PHILLIPS
Acting United States Attorney
D.C. Bar No. 415793

By:     _/s/ Brittany L. Reed_
BRITTANY L. REED
Trial Attorney – Detailee
La. Bar No. 31299
650 Poydras Street, Ste. 1600
New Orleans, Louisiana 70130
Brittany.Reed2@usdoj.gov
(504) 680-3031