**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Criminal Action No. 21-CR-000287 |
| | : | |
| HUNTER SEEFRIED, | : | |
| | : | |
| Defendant. | : | |

### DEFENDANT, HUNTER SEEFRIED'S MOTION TO DISMISS
### COUNT ONE OF THE INDICTMENT AND SUPPORTING MEMORANDUM OF LAW

### MOTION TO DISMISS

Defendant, Hunter Seefried, by and through undersigned counsel, Edson A. Bostic, Esquire and, pursuant to Rules 7(c)(1) and 12(b)(3)(B) of the Federal Rules of Criminal Procedure, respectfully moves this Court to dismiss Count One of the Indictment in this case.[1]

In support of his motion, Hunter Seefried avers as follows:

1.      On or about April 7, 2021, the grand jury returned an eight-count Indictment, charging Hunter Seefried and his father, Kevin Seefried, with violation of various crimes. Specifically, Hunter Seefried is charged with obstruction of an official proceeding, in violation of 18 U.S.C. §§ 1512(c)(2), and 2 (Count One); entering and remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1) (Count Two); disorderly and disruptive conduct in

---

[1] On October 12, 2021, Hunter Seefried filed a Motion to Dismiss Count One of the Indictment, challenging the constitutionality of 18 U.S.C. § 1512(c)(2) (DK. No. 36). The government responded on November 2, 2021. Similar motions to dismiss § 1512(c)(2) counts were presented to other courts in the district by other defendants. Several district courts have since ruled on some of those motions. Thereafter on March 14,2022, this Court dismissed the pending motion without prejudice to refile, taking into considerations the opinions other district courts that have already ruled on the issues raised in the original motion to dismiss. Accordingly, Hunter Seefried files this motion in compliance with the Court's Order.

a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2) (Count Three); disorderly conduct in a capitol building, in violation of 40 U.S.C. § 5104(e)(2)(D) (Count Four); parading, demonstrating, or picketing in a capitol building, in violation of 40 U.S.C. § 5104(e)(2)(G) (Count Five); entering and remaining in restricted building or grounds with physical violence against property, in violation of 18 U.S.C. § 1752(a)(4) (Count Six); destruction of government property, in violation of 18 U.S.C. § 1361 (Count Seven); and act of violence in the capitol grounds or buildings, in violation of 40 U.S.C. § 5104(e)(2)(F) (Count Eight).

2.      Hunter Seefried is a twenty-three-year-old with a ninth grade education, who accompanied his parents, with whom he lives with, to the Capitol on January 6, 2021.

3.      Count One of the Indictment against Hunter Seefried alleges that on or about January 6, 2021, he "attempted to, and did, corruptly obstruct, influence, and impede an official proceeding, that is, a proceeding before Congress, by entering and remaining in the United States Capitol without authority and committing an act of civil disorder and engaging in disorderly and disruptive conduct and destroying federal property" in violation of 18 U.S.C. §§ 1512(c)(2), and 2.

4.      Hunter Seefried contends that Count One of the Indictment must be dismissed because 18 U.S.C. §§1512(c)(2), and 2 is unconstitutionally vague, fails to state an offense and is violative of Hunter Seefried's due process rights under the Fifth Amendment, as well as his rights under the Sixth Amendment. 18 U.S.C. §§ 1512(c)(2), and 2. *United States v. Miller*, Crim. No. 21-00119, (D.D.C. March 7, 2022).

5.      Consequently, Count One must be dismissed as this allegation fails to state an offense, fails to provide Hunter Seefried with adequate notice of what he is charged with, and does not ensure that a grand jury has found sufficient evidence of the necessary elements of the offense

2

in violation of Rule 7(c)(1) of the Federal Rules of Criminal Procedure, and the Fifth and Sixth Amendments to the United States Constitution.

WHEREFORE, Defendant, Hunter Seefried, for these reasons and those set forth in the accompanying Memorandum in Support of Defendant's Motion to Dismiss Count One of the Indictment, which is incorporated herein by reference, respectfully requests this Honorable Court dismiss Count One of the Indictment against him.

## MEMORANDUM OF LAW

### I.    STATEMENT OF THE CASE

This matter arises from acts allegedly committed at the United States Capitol Building on January 6, 2021. On or about April 7, 2021, a grand jury returned an eight-count Indictment, charging Hunter Seefried with obstruction of an official proceeding, in violation of 18 U.S.C. §§ 1512(c)(2), and 2 (Count One); entering and remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1) (Count Two);  disorderly and disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2) (Count Three); disorderly conduct in a capitol building, in violation of 40 U.S.C. § 5104(e)(2)(D) (Count Four); parading, demonstrating, or picketing in a capitol building, in violation of 40 U.S.C. § 5104(e)(2)(G) (Count Five); entering and remaining in restricted building or grounds with physical violence against property, in violation of 18 U.S.C. § 1752(a)(4) (Count Six); destruction of government property, in violation of 18 U.S.C. § 1361 (Count Seven); and act of violence in the capitol grounds or buildings, in violation of 40 U.S.C. § 5104(e)(2)(F) (Count Eight).  On the day in question, Hunter Seefried was a twenty-three-year-old with a ninth grade education, who happened to accompany his parents, with whom he lives, to the Capitol. The government has also charged his father, Kevin Seefried, with multiple offenses related to the events of January 6, 2021.

Count One of the Indictment against Hunter Seefried alleges that on or about January 6, 2021, he "attempted to, and did, corruptly obstruct, influence, and impede an official proceeding, that is, a proceeding before Congress, by entering and remaining in the United States Capitol without authority and committing an act of civil disorder and engaging in disorderly and disruptive conduct and destroying federal property" in violation of 18 U.S.C. §§ 1512(c)(2), and 2.[1] Hunter Seefried contends that Count One of the Indictment must be dismissed because 18 U.S.C. §§ 1512(c)(2), and 2 is unconstitutionally vague, fails to state an offense and is violative of Hunter Seefried's due process rights under the Fifth Amendment, as well as his rights under the Sixth Amendment. Specifically, Section 1512(c)(2), makes it illegal for a person to otherwise

---

[1] The statute provides:

**18 U.S.C. § 1512. Tampering with a witness, victim, or an informant**

(c) Whoever corruptly–

**(1)**     alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or

**(2)**     otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so,

shall be fined under this title or imprisoned not more than 20 years, or both.

corruptly obstruct, influence, or impede an official proceeding. Count One must be dismissed as the term "otherwise" as set forth in § 1512(c)(2) is void for vagueness. Accordingly, Count One of the Indictment must be dismissed.

## II.   LEGAL ARGUMENT

### A.  Standard of Review

Federal Rule of Criminal Procedure 7(c)(1) requires an indictment to contain a "plain, concise, and definite written statement of the essential facts constituting the offense charged...." Fed. R. Crim. P. 7(c)(1). Failure of an Indictment to abide by the specificity requirement in Fed. R. Crim. P. 7(c)(1) subjects the Indictment to a challenge, pursuant to Rule 12(b)(3)(B) of the Federal Rules of Criminal Procedure, by allowing a defendant to move to dismiss the indictment on the grounds that it fails to state an offense. Similarly, Fed.R.Crim.P. 12(b)(3)(B) authorizes the dismissal of a charge in an indictment where there is a "defect in the indictment." Fed.R.Crim.P. 12 (b)(3)(B). When considering a motion to dismiss a count in an indictment, the district court must assume as true the allegations contained in the indictment and is required to rely only on those allegations. *United States v. Akinyoyenu*, 199 F.Supp.3d 106, 109-110 (D.D.C. 2016) (*citing United States v. Ballestas*, 75 F.3d 138, 149 (D.C. Cir. 2015)). Further, the district court must consider "whether the allegations in the indictment, if proven, permit a jury to conclude that the defendant committed the criminal offense as charged." *Akinyoyenu*, 199 F.Supp.3d at 109. The court's review is limited to the four corners of the indictment, and its analysis must be based on the language charged in the indictment and the language of the statute allegedly violated. *United States v. Miller*, Crim. No 21-119 at 8 (D.D.C. March 7, 2022) (*citing* Akinyoyenu, 199 F.Supp.3d at 109-110 (citations omitted)). This District recognizes the importance of assessing the sufficiency of an indictment, noting that it implicates "at least two core constitutional protections":

(1) the Sixth Amendment's right of an individual accused of a crime "to be informed of the nature and cause of the accusation" and, (2) the Fifth Amendment's guarantee that a criminal defendant may only be prosecuted for offenses, the elements of which have been considered and found to exist by a grand jury such that the defendant may not be subject to multiple prosecutions for the same offense. *United States v. Hillie*, 227 F.Supp.3d 57, 69-70 (D.D.C. 2017) (citations omitted).

In addition to these general principles, recently in *Miller*, *supra*, the district court determined that additional rules of interpretation applied because Miller challenged the scope of a federal criminal statute and its application to his conduct. There, the court recognized that the federal courts have "traditionally exercised restraint in assessing the reach of a federal criminal statute." *Miller* at 8 (*citing United States v. Aguilar*, 515 U.S. 593, 600 (1995). This restraint should be exercised "both out of deference to the prerogatives of Congress and out of concern that 'a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed.'" *Aguilar*, 515 U.S. at 600 (citations omitted).  In relation to § 1512 specifically, the Supreme Court has instructed lower courts to "exercise[] restraint in assessing the reach of [the] . . . statute both out of deference to . . . Congress . . . and out of concern that a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed[.]" *United States v. Arthur Anderson, LLP*, 544 U.S. 696, 703 (2005) (internal citations omitted) (strictly construing § 1512(b)(2)'s broadly worded language in finding that jury instructions failed to instruct that knowledge of wrongdoing and proof of a nexus between the alleged obstruction and an official proceeding were required elements of the offense).

The *Miller* court also applied the rule of lenity, which requires that courts "construe penal laws strictly and resolve ambiguities in favor of the defendant" as long as doing so would not

conflict with expressed congressional intent. *Miller* at 8-9 (*quoting United States v. Nasir*, 17 F.4th 459, 473 (3d Cir. 2021) and *Liparota v. United States*, 471 U.S. 419, 427 (1985)).

Applying these principles to Count One to the instant Indictment, it is evident that it fails to satisfy the specificity requirements of Rule 7(c)(1) and fails to state a claim under Rule 12(b)(3)(B) of the Federal Rules of Criminal Procedure. As a result, Count One of the Indictment fails to pass constitutional muster and must be dismissed with prejudice.

### B. Count One of the Indictment Must be Dismissed Because the Term "Otherwise" as Used in Section 1512 is Unconstitutionally Vague.

The meaning of the term "otherwise" as used in 18 U.S.C. §1512(c)(2) has been analyzed several times in this district as part of the ongoing January 6, 2021, criminal litigation. It was most recently examined in *United States v. Miller*, 1:21-CR-119 (CJN), ECF No. 72, where after an exhaustive and cogent examination of the plain meaning, statutory construction and legislative history of the term "otherwise" in the context of the statute, the district court found that Miller's alleged conduct failed to fit within the scope of 18 U.S.C. §1512(c)(2).

After recognizing that the term "otherwise" as used in §1512(c)(2) was "critical to determining what §1512(c)(2) covers," *Id*. at 11, the *Miller* court concluded that "[s]ubsection (c)(2) is a residual clause for subsection (c)(1)" which operates as a "catchall for the prohibition contained in subsection (c)(1)." *Id*. at 17. Under *Miller*'s interpretation, the link between the two subsections is the conduct prescribed in subsection (c)(1), and "subsection (c)(2) operates to ensure that by delineating only certain specific unlawful acts in (c)(1) . . . – Congress was not 'underinclusive'" by allowing other ways to violate the statute that are similar to the conduct prohibited in (c)(1). *Id*. at 17-18. The *Miller* court's interpretation is in accord with the Supreme Court's holding in *Begay v. United States*, 553 U.S. 137 (2008).

7

*Miller* further reasoned that the structure and scope of §1512 suggests that subsection (c)(2) has a narrow focus because the other subsections criminalize specific conduct in narrow contexts. *Id*. at 20. The court opined that while subsections (c)(2) and (c)(1) differed from the other subsections because they prohibit an individual from taking certain actions directly rather than towards another person, the language in subsection (c)(1) still "hones in on a narrow, focused range of conduct." *Id*. at 21. The court explained that, by contrast, if §1512(c)(2) "signals a clean break" from subsection (c)(1), it would be inconsistent with the statute as a whole because it would be the only provision to not contain a narrow focus. *Id*. The court stated that any different reading would improperly render subsection (c)(2) unnecessary. *Id*. at 21-22.

The court also discussed how the historical development of §1512 supports the conclusion that §1512(c)(2) operates as a catchall to (c)(1). *Id*. at 23-25. According to the court, the revisions to §1512(c) in 2002 filled a gap that existed because §1512(b) made it unlawful to cause "another person" to take certain actions but not for a person to take such action directly. The 2002 enactment of §1512(c) fixed that problem and took much of its language directly from §1512(b). *Id*. 23-24. Thus, the court reasoned that the fact that Congress took much of the language from a provision already contained in subsection (b) demonstrated that Congress intended subsection (c) to have a narrow, limited focus like subsection (b)(2)(B). *Id*. at 25.

The *Miller* court found that the legislative history also supports a narrow reading of subsection (c)(2). *Id*. at 26-28. The court explained the evolution of §1512(c) resulted in a statute that ensured that individuals acting alone would be liable for the same acts that were prohibited in other parts of §1512. *Id.* at. 27-28.

Accordingly, *Miller* held that §1512(c)(1) limits the scope of (c)(2) and "requires that the defendant have taken some action with respect to a document, record, or other object in order to

corruptly obstruct, impede or influence an official proceeding."[2] *Id*. at 28. Because the government did not allege that Miller took any action with respect to records, documents or "other objects," the court held that the indictment failed to state an offense against him. *Id*. at 29.

The court rejected the government's proffered interpretation that "otherwise" "serve[d] as a clean break between subsections (c)(1) and (2)," finding that the government's reading failed to "give meaning to the word 'otherwise'" and rendered the word "pure surplusage." *Id*. at 12. The court further reasoned that the government's reading was inconsistent with *Begay*, *supra*, wherein the United States Supreme Court concluded that the Armed Career Criminal Act's ("ACCA") use of the word "otherwise" tied together the preceding and following words. *Id*. at 12-13. Specifically, *Begay* held that "the text preceding 'otherwise' influenced the meaning of the text that followed: it 'limited the scope of the clause to crimes that are *similar to the examples themselves*.'" *Miller* at 13 (*quoting Begay*, 553 U.S. at 143). The court then explained why cases that adopted the "clean break" construction of "otherwise" in §1512(c)(2) were incorrect. *Id*. at 14-15.

The court also rejected the government's alternative reading of the statute – "that subsection (c)(1) contains specific examples of conduct that is unlawful under subsection (c)(2)" such that that the "link between" the two subsections "is that the unlawful conduct must relate to an 'official proceeding.'"  *Id*. at 15 (*citing United States v. Montgomery*, 2021 WL 6134591, *12 (D.D.C. December 28, 2021)). As the court explained, the problem with this alternative reading is that it renders the word "otherwise" superfluous because both subsections contain the phrase "official proceeding." *Id*. at 15-16.

---

[2] The *Miller* court also explained that, even assuming *arguendo* its interpretation was incorrect, at the very least the Court would be left with "serious ambiguity in a criminal statute" causing courts to "traditionally exercised restraint in assessing the reach of a federal criminal statute," *Aguilar*, 515 U.S. at 600, and have "construe[d] penal laws strictly and resolve[d] ambiguities in favor of the defendant." *Id*. at 28.

9

Hunter Seefried respectfully urges this Court to adopt the analysis and reasoning set forth in *Miller* and find that Count One fails to state an offense against him. Here, as in *Miller*, the Indictment does not allege or imply that Hunter Seefried took any action with respect to a document, record, or other object in order to corruptly obstruct, impede or influence Congress's certification of the electoral vote. *See* Indictment, Count One (DK. No. 20). Therefore, it fails to allege a violation of §1512(c)(2). Count One of the Indictment charges a violation of § 1512(c)(2), a catch-all provision that reaches conduct that "otherwise" obstructs an official proceeding. This Court should not expansively read "otherwise" in § 1512(c)(2), a statute enacted by Congress to address the Enron scandal and preclude the destruction of evidence in federal securities investigations, the actions of persons engaged in political demonstrations. Congress could not possibly have intended to include "political demonstrations" within the scope of the phrase "otherwise." No matter how disruptive, political demonstrations have no relationship to witnesses or information to be presented at proceedings, the proper scope of § 1512 based on its statutory language and its legislative history. A reading of the "otherwise" catchall provision in § 1512 that includes only conduct intended to generate false testimony, impede the testimony of witnesses, or impair the collection of evidence in some fashion is consistent with the case law.[3]  Count One of the Indictment alleges no such conduct by Hunter Seefried. As Count One of the Indictment is drafted, the term "otherwise" is limitless, has no textual or other constraints and therefore fails to give fair notice. The charges are not limited to other documents, by reference to § 1512(c)(1). The

---

[3] *See, e.g., United States v. Pugh*, 945 F.3d 9, 28 (2d Cir. 2019) (defendant destroyed several USB drives and deleted data on his iPod)*; United States v. Burge*, 711 F.3d 803, 809 (7th Cir. 2013) (upholding conviction of former Chicago police official for providing false answers to interrogatories in a civil law suit filed by a person seeking damages for mistreatment while in police custody)³; *United States v. Jefferson*, 751 F.3d 314, 321 (5th Cir. 2014) (making intentional false statements to court during a preliminary injunction hearing).

charges are not limited by reference to the title of §1512 to "[t]ampering with a witness, victim, or an informant." The charges are not limited to false statements, self-dealing, or shredding of evidence by reference to corporate fraud and accounting scandals that impelled passage of the Sarbanes-Oxley Act. Nor does case law give any hint that "otherwise" could reach actions by persons engaged in a political demonstration.

The allegation that Hunter Seefried entered the United States Capitol in an attempt "to corruptly obstruct, influence, and impede . . .a proceeding before Congress" as alleged in the indictment does not amount to a violation of § 1512(c)(2). Looking at the statutory intent of Congress when enacting the Sarbanes-Oxley Act, it is unlikely that Congress intended to create a broad general obstruction statute that reaches even the acts of demonstrators – a First Amendment protected activity – in § 1512(c)(2) by using a vague term such as "otherwise." This is especially true where § 1512(c)(2) does not even include a requirement that the person acted willfully, knowingly, or intentionally. Accordingly, Count One of the Indictment must be dismissed.

It is no surprise that constitutionality of §1512(c)(2) has been challenged by other defendants charged with violating this subsection before other courts in the district. When confronting this issue and analyzing the term "otherwise" in the context of §1512(c)(2), other courts have generally followed the lead of *United States v. Montgomery*, Crim. No. 21-046, 2021 WL 6134591 (D.D.C. December 28, 2021), and *United States v. Sandlin*, Crim. No. 21-088, 2021 WL 5865006 (D.D.C. Dec. 10, 2021) and have rejected defendants' respective challenges to §1512(c)(2). The defendant in *Montgomery* argued his alleged conduct fell outside the ambit of § 1512(c)(2) because the term "otherwise" limited the criminal conduct to conduct "that is directed at undermining a proceeding's truth-finding function through actions impairing the integrity and

availability of evidence." *Montgomery* at 21. Defendant argued that Section 1512(c) applies only to actions that "impair []the availability or integrity of evidence" and does not apply to conduct that physically impedes the proceeding itself." *Montgomery* at 1-2. Likewise, the defendant in *Sandlin* similarly moved to dismiss the same charge of his indictment on the grounds that "otherwise" as used in § 1512(c)(2) limited the scope to proceedings that consider actions related to evidence. Sandlin further argued that Congress did not "have the ability to make decisions based on witness testimony or evidence" during the Joint Session and, further, argue that the government has not alleged that they did anything to affect "the state and content" of anything Congress might have considered at the Joint Session." *Sandlin* at 5.

After conducting an analysis of the plain meaning of the statute and the legislative history, both courts rejected the narrow interpretation of "otherwise" in § 1512(c)(2) posited by the defendants and denied the defendants' motion to dismiss the counts of the indictments for failure to state a claim. However, the *Miller* court found the analysis in *Montgomery* unpersuasive.[4] For example, the *Miller* court in addressing the question of superfluity wrote:

> A different reading would also create substantial superfluity problems.
> After all, if subsection (c)(2) is not limited by subsection (c)(1), then the
> majority of § 1512 would be unnecessary. At a minimum, conduct made
> unlawful by at least eleven subsections— §§ 1512(a)(1)(A), 1512(a)(1)(B),
> 1512(a)(2)(A), 1512(a)(2)(B)(i), 1512(a)(2)(B)(iii), Case 1:21-cr-00119-
> CJN Document 72 Filed 03/07/22 Page 21 of 29 22 1512(a)(2)(B)(iv),
> 1512(b)(1),     1512(b)(2)(A),     1512(b)(2)(C),     1512(b)(2)(D),     and
> 1512(d)(1)— would also run afoul of § 1512(c)(2). To be sure, superfluity
> is not typically, by itself, sufficient to require a particular statutory
> interpretation. See Hubbard v. United States, 514 U.S. 695, 714 n.14 (1995).
> **But here, such substantial overlap within the same section suggests that
> Congress did not mean § 1512(c)(2) to have so broad a scope.**

---

[4] Like *Montgomery*, the *Sandlin* court found that interpreting §1512(c)(2) to extend beyond the impairment of evidence does not create intolerable overlap. *Montgomery*, *supra* at 28; *Sandlin*, *supra* at 14.

*Id*. 21-22 (emphasis added). Recognizing that other district courts have considered the question of superfluity, *Miller* considered the analysis in *Montgomery*, *supra*, and found the argument to be flawed, stating:

> Another court has sought to allay this overlap concern by pointing to the language Congress could have used: '[I]t would have been easy for Congress to craft language to achieve the goal that Defendants now hypothesize. Congress, for example, could have substituted Section 1512(c)(2) with the following: 'engages in conduct that otherwise impairs the integrity or availability of evidence or testimony for use in an official proceeding.' The fact that Congress, instead, enacted language that more generally—and without the limitations that Defendants now ask the Court to adopt— criminalized efforts corruptly to obstruct official proceedings speaks volume.'

*Id*. at 22 (*quoting Montgomery*, 2021 WL 6134591, at *12). The court went on to reason:

> That is certainly true, and in fact is why the Court does not believe that there is a single obvious interpretation of the statute. But it is also the case that reading § 1512(c)(1) as limiting the scope of § 1512(c)(2) avoids many of these structural or contextual issues altogether. Under such a reading, § 1512(c)(2) operates as a catchall to the narrow prohibition Congress created in § 1512(c)(1)—not as a duplicate to nearly all of § 1512.

*Id*. Taking the *Montgomery* court's analysis to its logical end, the *Miller* court noted that, "Perhaps another way of reading § 1512(c)(2) without creating substantial superfluity problems would be as creating "direct" liability for the other types of conduct covered by § 1512—that is, that it makes criminal an individual doing directly those things for which the rest of § 1512 requires action directed at another person…. While this reading might eliminate some superfluity, placing this kind of catchall in a subsection of a subsection in the middle-back of § 1512 is still unintuitive." *Id*. 22 n. 10.

As such, Seefried urges this Court to adopt the reasoning in *Miller*. The fact that *Miller*, *Montgomery*, and *Sandlin* each analyzed the language of §1512(c)(2) and the legislative history but came to different conclusions about the meaning of the statute demonstrates the inherent

ambiguity of the provision. As the *Miller* court noted, there is not "a single obvious interpretation of the statute." *Miller supra* at 22. Yet, the reasoning and results in *Montgomery* and *Sandlin* are flawed because they failed to properly apply the additional interpretive rules requiring the exercise of restraint in assessing the scope of federal criminal rules and the rule of lenity. Had the Montgomery and Sandlin courts and those that followed their reasoning applied and adhered to those rules, they would have concluded that §1512(c)(2) fails to state an offense.

## V.   CONCLUSION

For all the above reasons, Hunter Seefried respectfully requests that this Honorable Court should dismiss Count One of the Indictment because 18 U.S.C. § 1512(c)(2) is so vague that it fails to give fair notice to Hunter Seefried of the charges against him. Therefore, Count One of the Indictment violates Hunter Seefried's due process rights under the Fifth Amendment, as well as his rights under the Sixth Amendment.


Dated:  April 8, 2022                      Respectfully submitted,


                                           /s/ Edson A. Bostic
                                           Edson A. Bostic, Esquire
                                           The Bostic Law Firm
                                           1700 Market St., Suite 1005
                                           Philadelphia, PA 19103
                                           (267) 239-4693
                                           Eab.bosticfirm@gmail.com

                                           Attorney for Defendant,
                                           Hunter Seefried

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of this motion was sent to Counsel for the

Government, Brittany Reed, Assistant U.S. Attorney and Eugene Ohm, Esquire, counsel for

defendant, Kevin Seefried, on April 8, 2022, via CM/ECF and email.


/s/ Edson A. Bostic
Edson A. Bostic, Esquire