UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **United States of America,**<br><br>v.<br><br>**Hunter Seefried,**<br><br>**Defendant.** | Case No. 21-cr-287-2 (TNM) |

**Emergency Motion to Reduce Sentence**

Hunter Seefried, through counsel, respectfully moves this Court to reduce his term of imprisonment from 24 months to time served (thereby modifying his projected release date from May 3, 2024, to February 1, 2024), due to a retroactively applicable amendment to the U.S. Sentencing Guidelines impacting so-called "zero-point offenders." *See* Amend. 821 (Part B), U.S.S.C. (eff. Nov. 1, 2023). The government has indicated that it opposes this motion on the ground that he does not qualify under the violence prong of the criteria (discussed more fully below). Given that Mr. Seefried's projected release date is currently May 3, 2024, and he seeks a modification to February 1, 2024, he respectfully requests that the Court rule on this matter on an expedited basis.

On June 15, 2022, after a bench trial, the Court found Mr. Seefried guilty of five counts relating to January 6, 2021, including: (Count 1) obstruction of an official proceeding and aiding and abetting, in violation of 18 U.S.C. §§ 1512(c)(2) and (2); (Count 2) entering and remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1); (Count 3) disorderly and disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2); (Count 4) disorderly conduct in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(D); and

(Count 5) parading, demonstrating, or picketing in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(G). *See* Judgment, ECF No. 124. The Court acquitted Mr. Hunter of the remaining counts, including: (Count 6) entering and remaining on grounds with physical violence against property, in violation of 18 U.S.C. 1752(a)(4); (Count 7) destruction of government property and aiding and abetting, in violation of 18 U.S.C. §§ 1361(a) and (2), and (Count 8) act of physical violence in the Capitol grounds or buildings, in violation of 40 U.S.C. 5104(e)(2)(F). *See* Bench Verdict, ECF No. 109 at 6-8. Notably, the Court dismissed all the counts requiring the defendant to use "physical acts of violence," which the Court determined was not satisfied. *See id.*

At the time, the U.S. Sentencing Guidelines recommended 15 to 21 months' imprisonment, as Mr. Seefried had a total offense level of 14 and zero criminal history points. *See* Statement of Reasons, ECF No. 125. On October 24, 2022, this Court sentenced Mr. Seefried to an aggregate sentence of 24 months' imprisonment—amounting to an above-guideline sentence. *See* Judgment, ECF No. 124. He is projected to complete his prison sentence on May 3, 2024.[1]

After his sentencing, the Sentencing Commission retroactively amended the sentencing guidelines to reduce the total offense level by two points for defendants without any criminal history points, so long as they meet certain criteria:

1. the defendant did not receive any criminal history points from Chapter Four, Part A;
2. the defendant did not receive an adjustment under §3A1.4 (Terrorism);
3. the defendant did not use violence or credible threats of violence in connection with the offense;
4. the offense did not result in death or serious bodily injury;
5. the instant offense of conviction is not a sex offense;

---

[1] *See* Bureau of Prisons, *Inmate locator*, available at https://www.bop.gov/inmateloc/ (reporting an individual's projected release date).

6. the defendant did not personally cause substantial financial hardship;
7. the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
8. the instant offense of conviction is not covered by §2H1.1 (Offenses Involving Individual Rights);
9. the defendant did not receive an adjustment under §3A1.1 (Hate Crime Motivation or Vulnerable Victim) or §3A1.5 (Serious Human Rights Offense); and
10. the defendant did not receive an adjustment under §3B1.1 (Aggravating Role) and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848;

U.S.S.G. § 4C1.1(a).  This amendment is commonly referred to as Amendment 821, part B.

Mr. Seefried meets all the above criteria.  He has zero criminal history points, *see* PSR ¶ 52; he did not receive any adjustment for terrorism; the offense did not result in death or serious bodily injury; the offense was not a sex offense; he did not possess a dangerous weapon; he did not personally cause substantial financial hardship; the offense of conviction is not covered by §2H1.1; he did not receive any adjustments under §§ 3A1.1 or 3A1.5; and he did not receive a § 3B1.1 adjustment and engage in a continuing criminal enterprise.

The government conveyed to counsel that it believes Mr. Seefried is ineligible for a sentence reduction because he does not meet the criteria that he "did not use violence or credible threats of violence in connection with the offense."  *See* U.S.S.G. § 4C1.1(a)(3).  The government is mistaken—and this Court's verdict acquitting Mr. Hunter of all the counts that required violence demonstrates it.  *See* Bench Verdict, ECF No. 109 at 8-9.  Specifically, Count Six required the government to prove "the defendant engaged in any act of *physical violence* against any person or property in any restricted building or grounds."  *See* Gov't Tr. Br., ECF No. 88 at 13 (outlining the elements); *see also* ECF No. 111 at 153 (defense agreeing with government's elements).  And Count Eight required the government to prove "that the defendant engaged in

3

an act of *physical violence*" on the Capitol grounds, which was defined as "any act involving (A) an assault or other infliction or threat of infliction of death or bodily harm on an individual; or (B) damage to, or destruction of, real or personal property." *Id.* at 15 (emphasis added). The government argued that Mr. Hunter engaged in violence by being one of the first individuals to enter the Capitol after he removed a glass shard from a broken window that two others broke in his presence. *See* Trial Transcript, ECF No. 112 at 176-77 (government arguing in closing that "the only act of physical violence that we're alleging is the destruction of the window"). This Court disagreed. It concluded that "I do not believe Hunter Seefried destroyed the window," nor did he aid and abet in the property destruction. *See* Bench Verdict, ECF No. 109 at 8-9. Thus, this Court has largely already decided this issue.[2]

The criteria for a sentence reduction requires that "the defendant did not use violence or credible threats of violence in connection with the offense." U.S.S.G. § 4C1.1(a)(3). To qualify as "using violence," one must "use[] physical force *with the intent to injure*[.]" *United States v. Pineda-Duarte*, 933 F.3d 519, 523 (6th Cir. 2019) (emphasis added) (interpreting U.S.S.G. § 2D1.1(b)(2)'s identically-worded "used violence" provision in the absence of a Guidelines definition and relying on Black's Law Dictionary and Webster's Dictionary). And "credible threats of violence" require one to credibly "express an intention to inflict pain, harm, or punishment" through violence. *See Seefried-Barajas*, 71 F.4th at 1107 (cleaned up) (interpreting

---

[2] While the two issues involve different standards—beyond a reasonable doubt versus preponderance of the evidence—the Court agreed with the government's factual argument that Mr. Seefried removed a shard of glass from the broken window but disagreed that this conduct could qualify satisfy the "violence" requirements set out in the respective statutes. *See* ECF No. 109 at 7-8. Hence, whatever the applicable standard, the Court's finding indicates that Mr. Seefried simply did not engage in "violence."

4

U.S.S.G. § 2D1.1(b)(2) and quoting definition of "threats" from *American Heritage Dictionary of the English Language* 1813 (5th ed. 2016)).  Even pushing of an officer—which Mr. Seefried did not do—is not sufficient to satisfy these definitions where the defendant lacks the requisite intent to injure.  *See United States v. Jaimes-Molina*, No. 17-cr-69, 2019 WL 4254459, at *5 (N.D. Ind. Sept. 9, 2019) (finding that even though defendant shoved officer, defendant lacked the intent for the act to qualify as a credible threat to use violence).

It is simply not enough that Mr. Seefried was part of a crowd where *others* engaged in violence or yelled at officers.  Rather, the plain text and structure of § 4C1.1 makes clear that the defendant must *personally* use violence or make credible threats of violence to be disqualified under § 4C1.1(a)(3).  Specifically, U.S.S.G. § 4C1.1(a)(3) requires that "*the defendant* did not *use* violence or credible threats of violence in connection with the offense." *Id.* (emphasis added).  By contrast, § 4C1.1(a)(4) requires that "*the offense* did not *result* in death or serious bodily injury." *Id.* (emphasis added).  The contrast in these provisions' subjects (*i.e.*, "defendant" versus "offense") and operative verbs ("use" versus "result" or "involves") makes clear that § 4C1.1(a)(3)'s criteria is defendant-specific; it requires the defendant himself, and not others in the crowd, to "*use* violence or credible threats of violence in connection with the offense." *Cf. United States v. Seefried-Barajas,* 71 F.4th 1104, 1106-07 (8th Cir. 2023) (interpreting similarly-worded threats provision at U.S.S.G. § 2D1.1(b)(2) and concluding that the "sentence's subject, the doer of the action, is the defendant" and that "[g]rammatically speaking, the defendant is the one who must make the credible threat, even if it involves the potential use of violence by someone else").

Given the above principles, Mr. Seefried is eligible for a sentence reduction under

5

U.S.S.G. § 4C1.1. He did not personally use or credibly threaten violence and had no intent to injure others. On January 6, Mr. Seefried traveled with his father, mother, and girlfriend from Delaware to Washington, D.C., to attend the "Stop the Steal" rally. PSR ¶18. "Along with thousands of others," he entered the grounds and approached the Capitol on the West Front. PSR ¶18. While near the Capitol, he watched two *others* break a window of the Capitol building, and then proceeded to enter through the broken window. *See* Bench Verdict, ECF No. 14 at 7 (Court: "I do not believe Hunter Seefried destroyed the window," as "the *other* two men had taken turns damaging the window and had, ultimately, destroyed it"). While inside the Capitol, he was part of the group that followed Officer Goodman up the stairway where *others* yelled and made arguably threatening statements. *See id.* at 14 (noting *others* yelled at Officer Goodman "Where are you hiding?" Where are all the members at?" "Where are they counting votes at?" but finding "there is no evidence that [Hunter Seefried] himself yelled these things"). None of these actions by Mr. Seefried involve the use of physical force with the intent to injure or any expression of an intention to inflict pain.

When faced with a similarly-situated defendant—one who the government claimed was very close to rioters who overran a group of officers—Judge Mehta rejected the government's argument relating to overarching violence and concluded Mr. Park deserved a reduction under U.S.S.G. § 4C1.1. *See United States v. Stewart Parks,* Case No. 21-cr-441 (APM), Sent'g Tr. at 10 (Nov. 15, 2023).[3] In reaching this decision, Judge Mehta acknowledged the newness of the

---

[3] Mr. Parks is represented by the Federal Public Defenders in his appeal, Case No. 23-3222, and therefore, although it has not yet been uploaded to PACER in the underlying case, the Federal Public Defenders has the sentencing hearing transcript available as his appellate attorneys. Undersigned counsel can distribute the transcript upon request.

6

provision, but relied on the guideline's text to find that the defendant must *personally* use or credibly threaten violence to be disqualified under § 4C1.1(a)(3):

> I assume, like all other provisions, [the violence] has to be based on both the offense conduct and the related conduct.
>
> He hasn't been charged or convicted for anything that involves a physical harm. And to the extent that he, you know, did participate in the larger crowd, I just don't think [that is sufficient], . . . you know, the adjustment speaks in terms of the offense did not result in death or serious bodily injury. The defendant did not use violence or credible threats of violence.
>
> …
>
> [N]otwithstanding what was conduct that clearly contributed to the chaos and the mayhem of the day and did so in a significant way, I just don't think any of the disqualifying factors here are applicable to his offense or to the related conduct[.]

*Id.* at 38-39. It is counsel's understanding that other judges in this district have also rejected the government's argument and granted January 6 offenders the benefit of U.S.S.G. 4C1.1, despite their indirect contributions to the overall "chaos and mayhem" where they did not personally use or credibly threaten violence. *See, e.g.*, *United States v. Eicher*, No. 22-cr-38 (BAH); *United States v. Weyer*, No. 22-cr-40 (JDB).[4] The same result applies here.[5]

---

[4] Undersigned counsel was not present at these hearings and does not have access to the transcripts but heard from credible sources that they found U.S.S.G. 4C1.1 applied to these January 6 defendants. The briefing in both cases indicates this issue was contested in those cases. *See* Min. Order in *Eicher*, No. 22-cr-38-BAH (Aug. 31, 2023) (ordering parties to submit their position as to whether "she would be eligible for a 2 point reduction to her base level as sentencing" under U.S.S.G. § 4C1.1(a)); *see also* Gov'ts Resp. re Sent'g Mem., ECF No. 61 (arguing § 4C1.1 does not apply).

[5] Moreover, when interpreting the similarly-worded (albeit broader) violence component in U.S.S.G. § 2J1.2(b)(1)(B)—which applies "*[i]f the offense involved causing or threatening to cause physical injury to a person, or property damage*"—several courts in this district (including this one), refused to apply it where defendants did not themselves use violence or threats. *See, e.g.*, *United States v. Wood*, No. 21-cr-223 (APM), ECF No. 64 (rejecting § 2J1.2(b)(1) enhancement where the defendant waived a flag in the face of police officers and was arguably part of a group involved in pushing officers); *United States v. Hale-Cusanelli*, No. 21-cr-37 (TNM), ECF No. 120 (rejecting § 2J1.2(b)(1)(B) enhancement where defendant (i) told others to "Advance, advance,

7

Because Mr. Seefried is eligible under the criteria at § 4C1.1, this Court may reduce his sentence. Section 3582(c)(2) authorizes the Court to reduce a prison sentence imposed "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission . . . if such a reduction is consistent with applicable policy statements issued by the Commission." *Id.*; *see also* U.S.S.G. § 1B1.10(a)(1). The Commission's applicable policy statements create two relevant limitations to granting a sentence reduction: (1) any reduction cannot go below the low end of the now-applicable guidelines' range, *see* U.S.S.G. § 1B1.10(b)(2)(A); and (2) any order reducing the term of imprisonment must have an effective date of February 1, 2024 or later, *see* U.S.S.G. § 1B1.10(e)(2); *id.* at application note 7.

Mr. Seefried meets all the above criteria in U.S.S.G. § 4C1.1 and is eligible for a sentence reduction given that his original sentencing range (shown below on the left) has been subsequently lowered by the Sentencing Commission (shown below on the right):

---

advance"; (ii) was present near a scuffle between an officer and another individual and tried to grab the individual out of the officer's grasp; (iii) picked up and moved bike rack barriers; and (iv) was part of the crowd that climbed stairs on the right of the Senate wing door); *United States v. Brock*, No. 21-cr-140 (JDB), ECF No. 112 (rejecting § 2J1.2(b)(1)(B) enhancement where defendant made violent statements leading up to January 6 and noting the enhancement "is meant for the specific special circumstance of where someone actually engages in or is on the scene threatening physical injury or property damage"); *see also United States v. Cua*, No. 21-cr-107, ECF No. 372 at 20, 27 (finding a defendant who waived a baton at an officer while pushing him with other rioters "just barely clears the threshold of having threatened the officer" under § 2J1.2(b)(1)(B), while contrasting Cua with others who "stand there passively while this was all going on and while the officer was being attacked").

|  | **Original Sentence** | **Application of Amendment 821 (Part B)** |
|---|---|---|
| Total offense level: | 14 | 12 |
| Criminal history points: | 0 | 0 |
| Criminal history category: | I | I |
| Guideline range: | 15-21 months | 10-16 months |
| Sentence: | 24 months | 18 months/ time served (proposed) |
| Projected release date: | May 3, 2024 | February 1, 2024 (proposed) |

As shown above, if Part B of Amendment 821 had been in force when Mr. Seefried was sentenced, his guideline range would have been 10-16 months instead of 15-21 months.

Accordingly, Mr. Seefried requests that the Court convert the above-guideline sentence he received under the old guidelines (24 months with a range of 15-21 months) to a proportionate above-guideline sentence under the now-applicable guidelines (18 months with a range of 10-16 months).[6] Normally, this would amount to a six-month reduction. However, given that Mr. Seefried's projected release date is May 3, 2024 and a six-month reduction would modify his release date to before February 1, 2024, he respectfully requests that his sentence be reduced to "time served" with an order having an effective date of February 1, 2024. *See* U.S.S.G. § 1B1.10(e)(2). In effect, this would modify Mr. Seefried's projected release date from May 3, 2024 to February 1, 2024, amounting to roughly a four-month reduction.

A proposed order is attached.

---

[6] Counsel arrived at the proposed recommendation of 18 months based on the following calculations: 24 months (Mr. Seefried's sentence) divided by 21 months (the high-end of the old guidelines) equals roughly 1.14; 1.14 multiplied by 16 months (the high-end of the new guidelines) equals roughly 18 months.

9

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

_____/s/_____
BENJAMIN FLICK
Research & Writing Attorney
Federal Public Defender's Office
625 Indiana Ave, NW, Suite 550
Washington, D.C. 20004

**Certificate of Service**

  I certify that on January 26, 2024, a copy of Defendant's Motion for a Sentence Reduction was served via electronic mail upon:

Jennifer Blackwell
Deputy Chief of the Criminal Division
United States Attorney's Office
Jennifer.Blackwell3@usdoj.gov

                 _____/s/_____
                 BENJAMIN FLICK
                 Research & Writing Attorney
                 Federal Public Defender's Office
                 625 Indiana Ave, NW, Suite 550
                 Washington, D.C. 20004